THOMAS LYNCH et al. v. THE CITY OF KANSAS CITY et al.

TAX—*Restraining Collection—Civil Code, Amended.* Section 253 of the code of civil procedure is amended so far as restraining the collection of an assessment is concerned, by the provisions contained in § 1 of chapter 101 of the Laws of 1887, incorporated into the General Statutes of 1889, as ¶ 590.

*Error from Wyandotte District Court.*

THE opinion states the material facts.

*Junius W. Jenkins*, and *W. C. Wells*, for plaintiffs in error.
*W. S. Carroll*, for defendants in error.

Opinion by SIMPSON, C.: On the 12th day of May, 1887, the mayor and councilmen of the city of Kansas City passed the following resolution:

"*Resolved by the Mayor and Councilmen of the city of Kansas City*, That it is necessary to pave Third street from the west end of the Kansas river bridge to the north line of Minnesota avenue," etc.

Third street is one of the public streets in said city, running due north and south. At its southern termination it intersects or runs into a street called Ferry street. The latter street extends northeasterly and southwesterly past the southern termination of Third street, forming an obtuse angle. Ferry street is near the bank, and runs parallel with the Kansas river. There are two iron bridges across the river, one near the intersection of Third and Ferry streets, and the other a block further southwest, and terminating in Ferry street. On the 30th day of November, 1887, the council passed an ordinance declaring it necessary to pave Third street with cedar blocks from the west end of the Kansas river bridge to the north line of Minnesota avenue. This was approved by the mayor on the 5th day of December, following its passage. The ordinance directed the city clerk to advertise in the official paper of said city for proposals for curbing and paving said street, but no such advertisement was thereafter made. Prior to the passage of said ordinance, to wit, on the 17th day of September, 1887, the city clerk published a "Notice to contractors," stating that—

"Sealed proposals will be received at the city clerk's office until 5 P. M. Tuesday, October 11, 1887, for curbing and paving Third street (north side) from the west end of Kansas river bridge to Minnesota avenue, according to plans and specifications of city engineer, now on file at this office."

February 18, 1888, the mayor of said city published a notice that —

"There will be a special meeting of the city council on Tuesday evening, February 21, 1888, at 7 o'clock, for the purpose of hearing any and all complaints that may be made as to the valuation assessed by the appraisers of real estate abutting on Third (3d) street from Minnesota avenue to Ann street, and Ferry street from Ann street to the iron bridge (north side), and also to hear any and all complaints as to the validity and fairness of the assessments or special taxes, to be assessed and levied on all lots, pieces and parcels of ground liable for the payment of paving said Third (3d) street between the points named. The following-named lots, pieces and parcels of ground are liable for the assessment of paving Third (3d) street in the city of Kansas City, Kansas."

Then follows a detailed list of property, including the several lots of the plaintiffs set forth in the petition. Under the above proceedings the mayor and council let the contracts, and caused to be curbed with stone and paved with cedar blocks said Third street from Minnesota avenue south to the end thereof at its intersection with Ferry street, and also Ferry street from the south end of Third street to the second bridge from that point across the Kansas river. Bonds were issued by said city and sold to raise money to pay for said improvements; and subsequently, a short time before this suit was brought, a levy of special taxes was made by said mayor and council on all real estate abutting on said Third street, and also on Ferry street, and to the center of the block on either side thereof, from Minnesota avenue to a point south and southwest as far as said Third and Ferry streets were paved, for the purpose of raising a revenue to pay the first installment (one-tenth) of said bonds, and accrued interest then due. The plaintiffs, Lynch, House, Stevens, Flanagan and McCarthy, own the lots respectively described in the petition abutting on Ferry street, and the plaintiff Hannan two lots on Barnett street, as described in their petition, and are in the taxing district upon the real estate of which said levy was made. December 1, 1888, this action was brought by

plaintiffs, praying for an injunction against defendants to restrain the collection of said special taxes levied against their said lots, and a temporary restraining order was granted by the judge of the district court. Defendants by their answer filed at the hearing of said motion admit, in substance, the facts set forth in the petition, but claim:

First, "That Third street and that portion of Ferry street between the west end of the bridge across the Kansas river to the eye in location, direction and in fact constitute one and the same street, said portion of Ferry street being a continuation eastward of Third street," and "is commonly known as and called by all classes of the people of the city as Third street extension."

Second, "That plaintiffs knew at the time of the passage of the resolution and ordinance to pave Third street, that it was the intention of the city to pave a portion of Ferry street also, and saw the work done, accepted the benefits thereof, and took no steps to prevent the same at the time, and are therefore estopped from being now heard to complain in regard to the premises, and are not in equity entitled to any injunction to restrain the defendants from proceeding to collect the taxes upon their property so levied for the making of said improvements upon said Ferry street, and in payment of the bonds so issued therefor."

And third, that the plaintiffs did not commence this action "within thirty days from the time the amount due on each lot or piece of ground liable for said assessment was ascertained," therefore the suit is barred by the limitation "contained in § 1 of chapters 102 and 101 of the Laws of 1887."

December 8, 1888, the case was heard on the motion of plaintiffs for a temporary injunction, and taken under advisement by the court. March 2, 1889, the court overruled said motion and denied plaintiffs' application for a temporary injunction, but retained in force the restraining order for thirty days till the case was filed in this court. Of this judgment of the district court the plaintiffs complain, and allege the same as error.

An attempt is made by the attorneys of the plaintiffs in error to have this action classified as one instituted under § 253 of the code of civil procedure. For the purposes of such a classification, the action was commenced against the city of Kansas City and the treasurer of said city, and the treasurer of Wyandotte county. The petition alleges a levy of a special assessment against the real property of the plaintiffs below and in error here, the certification of that levy by the city clerk to the county clerk, and that the same has been placed on the tax-roll of the county for collection with other taxes of the present year. In the prayer an injunction is called for, restraining the officers named from the collection of such alleged illegal taxes. It is evident from the history of the case heretofore given, that the burden complained of is not the ordinary taxation for state, county, municipal, or school purposes, but special assessments made against city lots owned by the plaintiffs in error, for the improvement of a street or streets upon which their lots abut. Section 253 of the code of civil procedure reads as follows:

"An injunction may be granted to enjoin the illegal levy of any tax, charge or assessment, or the collection of any illegal tax, charge or assessment, or any proceeding to enforce the same; and any number of persons whose property is affected by a tax or assessment so levied, may unite in the petition filed to obtain such injunction."

It will be seen that this section authorizes the restraining of the levy or collection of any tax, charge or assessment; and in this connection it hardly becomes necessary to dwell on the plain distinction between *tax* and *assessment*, as used in this section. The sole object of this petition is to restrain the collection of the assessment made by the city council on the real property of these plaintiffs in error for the cost of curbing and paving Third street from the west end of the Kansas river bridge to the north line of Minnesota avenue. It is said by the city that § 253 of the code of civil procedure is amended so far as restraining the collection of an assessment is concerned, by the provisions contained in § 1 of chapter

101 of the Laws of 1887, incorporated into the General Statutes of 1889 as ¶590. This section provides that—

"No suit to set aside the said special assessments, or to enjoin the making of the same, shall be brought, nor any defense to the validity thereof be allowed, after the expiration of thirty days from the time the amount due on each lot or piece of ground liable for such assessment is ascertained."

In the case of *City of Topeka v. Gage*, ante, p. 87, same case, 24 Pac. Rep. 82, this court, commenting on these words of limitation, has said:

"The language of this statute is such as to leave little or no room for construction. Its provisions are plain, direct, and positive, and seem sufficiently broad to cut off all defenses not asserted within the period of time named therein. It says that no suit shall be brought, nor any defense allowed, after the expiration of thirty days—from what? From the time the amount due on each lot is ascertained."

With this broad and liberal interpretation of this statute, a conflict inevitably arises between it and certain parts of § 253, as above given. Section 1 of the act of 1887 provides that in cities of the first class, when streets are improved and the expense is chargeable to the abutting property, the payment may be provided for either in installments or by levying the whole cost at one time; but if the installment plan is adopted, improvement bonds may be issued, payable in installments of equal amounts each year, such bonds not running longer than ten years, nor with interest greater than seven per cent. The adoption of the plan of the issue of improvement bonds furnishes money with which to pay the contractors for the improvement of the street when the same is completed, and gives the owners of abutting property ten years within which to pay the bonds and interest, in yearly installments. The act also provides that the owner of abutting property liable to such a special assessment may redeem his property from such liability by paying the entire amount chargeable against his property thirty days before the issue of such bonds, and then adds the words of limitation heretofore recited.

The plain intent of these various provisions is to cause litigation, if any there is to be, to be commenced before the issue of the bonds, so as to avoid any uncertainty about their legality that might affect their market value. The thirty days' limitation within which the assessments—that are the basis of the bonds—can be attacked, is a wise one, is reasonable as to time, and is of unquestioned validity in every respect. To give it force we must hold that it changes the time within which an action of this kind can be instituted under § 253 of the code, and leaves that section to apply only to illegal taxes and illegal charges. The word " assessment," as used in § 253 of the code, and in ¶ 590 of the General Statutes of 1889, means the specific amount charged on the property, and not the mere act of valuation.

It is said by the plaintiffs in error that by reason of the declaratory resolution and the ordinance not mentioning words "Ferry street," and for other reasons enumerated in their briefs, that the city council never obtained the power or jurisdiction to act, and that the special assessments are void, and being void, that the thirty days' limitation has no application. We do not think so. The street, or the portion of the street or streets that are to be improved, must be plainly indicated, so that not only the general public, but the owners of the particular abutting property must be advised of the proposed improvement. The mention of a prominent landmark, as a monument, such as an iron bridge across the river, as a designation of one of the termini of the proposed improvement, is better than a particular description, and in case of a conflict would control such a description. We have no doubt but that every property-holder along Third and Ferry streets knew from the declaratory resolution and the ordinance, the exact limits within which these streets were to be improved.

The action was not commenced in time. We recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.