S. A. MARSHALL *et al.* v. THE CITY OF LEAVENWORTH.

1. STREET IMPROVEMENTS — *Limitation of Action to Defeat Tax.* The limitation of thirty days within which an action can be brought to defeat or avoid a special assessment for street improvements, under § 1 of chapter 101, Laws of 1887, is constitutional and valid, and the time when the "assessment is ascertained," and when the limitation commences to run, is when the ordinance levying the assessments and designating the amount of the assessment levied upon each particular lot or piece of ground, is published and takes effect.

2. PROTEST — *by Whom.* The protest provided for by § 14 of the act relating to cities of the first class to be available must be of "two-thirds of the owners of the property resident in the city liable to taxation" for the street improvements, and not merely of "two-thirds of the property-owners liable for the tax to be paid for said street improvements" without regard to residence.

*Error from Leavenworth District Court.*

ACTION to restrain the collection of a certain tax. Judgment for the defendant *City,* at the December term, 1887. The plaintiffs, *Marshall* and others, bring the case to this court. The facts appear in the opinion.

*J. H. Gillpatrick,* for plaintiffs in error.

*C. F. W. Dassler,* city attorney, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Leavenworth county on September 5, 1887, by S. A. Marshall and others, against the city of Leavenworth, a city of the first class, to perpetually enjoin the defendant as a municipal corporation from all further proceedings to collect or enforce certain special assessments levied upon the property of the plaintiffs for the payment of certain street improvements made upon a certain street upon which the plaintiffs' property abuts. The defendant demurred to the plaintiffs' petition, and also to their amended petition, upon the ground that the same did not state facts sufficient to constitute a cause

of action, and both of such demurrers were sustained by the court; and the plaintiffs, as plaintiffs in error, bring the case to this court for review.

Various irregularities are alleged in the plaintiffs' petition and amended petition, as having occurred in the proceedings upon which the aforesaid assessments are founded; and the plaintiffs make the claim that such irregularities render the aforesaid assessments absolutely void; while the defendant claims that such irregularities do not render the assessments either void or voidable, but whether void or voidable, still the defendant claims that the plaintiffs did not commence their action in proper time, under §1, chapter 101 of the Laws of 1887, (Gen. Stat. of 1889, ¶ 590,) and therefore that their supposed action is barred by the limitation contained in the aforesaid statute. It appears that the proceedings upon which the assessments were founded were commenced on March 22, 1887, by the passage of certain resolutions declaring that it was necessary to pave and curb a certain portion of Olive street in said city, (which portion of such street we will hereafter mention merely as Olive street, or as said street, etc.); that such resolutions were published for four consecutive weeks in the official newspaper of the city; "that within the twenty days prescribed by law, said plaintiffs did file in the office of the clerk of said defendant city a protest against paving said part of Olive street, signed by two-thirds of the property-owners liable for the tax to be paid for said street improvements, with the understanding of all the signers of the protest, that they were protesting against paving, and curbing also, and four-fifths of the owners of the property would have signed it had it been presented to them"; that on May 9, 1887, the city passed an ordinance providing for grading, curbing, guttering, paving, etc., streets, alleys, etc., in said city, making special assessments therefor, paying installments thereon, issuing bonds, etc.; that on May 17, 1887, estimates of the costs for paving and curbing said street were made and filed by the city engineer; that on May 19 to 21 an ordinance was passed declaring it necessary to curb said street, and ordering the

same to be done in conformity with the plans and specifications of the city engineer, and ordering that assessments be made and bonds issued, etc.; that at the same time another ordinance was passed declaring it necessary to pave the aforesaid street, and ordering the same to be done in conformity with the plans and specifications of the city engineer, and providing for assessments, and the issue of bonds, etc.; that on May 31, 1887, the city entered into a contract with J. B. Smith & Co. for paving said street, and with Geiger and Campbell for curbing the same; that afterward appraisers were appointed to appraise the abutting lots, and the appraisements were made and filed as required by law; that on July 28, 1887, an ordinance was passed by the city council fixing the specific amount of the assessment against each particular lot on said street; that this ordinance was approved by the mayor on July 29, 1887, and was published on August 1, 1887, at which time it took effect; that on August 9, 1887, a notice to each lot-owner of the assessment upon his property was mailed to him. This action was commenced on September 5, 1887, as aforesaid.

All the irregularities in the proceedings upon which the aforesaid assessments were founded, except the city's disregard of the aforesaid protest, may be passed over and disregarded, for, as we think, all the other irregularities are 1. Street improvements— limitation of action to defeat tax. waived and cured by the plaintiffs' failure to commence any action within thirty days after the publication and the taking effect of the ordinance making the specific assessments upon each portion of the abutting property. (*Wahlgren v. Kansas City*, 42 Kas. 243; *City of Topeka v. Gage*, ante, p. 87; same case, 24 Pac. Rep. 82; *Lynch v. Kansas City*, just decided. The aforesaid limitation reads as follows:

· "No suit to set aside the said special assessment, or to enjoin the making of the same, shall be brought, nor any defense to the validity thereof be allowed, after the expiration of thirty days from the time the amount due on each lot or piece of ground liable for such assessment is ascertained." (Laws of 1887, ch. 101, § 1; Gen. Stat. of 1889, ¶ 590.)

The assessment referred to in this statute is certainly "ascertained" when the ordinance making the assessment and designating the specific amount of the tax assessed against each particular lot or piece of ground abutting on the street is published. The plaintiffs, however, claim that the amounts of the assessment are not ascertained until the owner of the property *receives* the notice mailed to him by the city clerk under the following provision, which is found in the same section in which the aforesaid limitation is found, which provision reads as follows:

"The owner of any piece of property liable to any such special assessment may redeem his property from such liability by paying the entire amount chargeable against his property, upon the city clerk mailing him a written or printed notice thirty days before the issuance of the bonds."

Now this provision has nothing to do with the aforesaid limitation. The notice to the lot-owners need not be mailed within thirty days after the amount of the assessment is ascertained, but only within "thirty days before the issuance of the bonds," and the bonds may not be issued for months after the amount of the assessments is ascertained, and made a fixed charge upon the property. Besides, the notice may then be mailed to the several lot-owners on different days, and be received by them on different days; and some of the notices may never be received at all. Indeed, the postoffice address of some of the lot-owners might not be ascertainable; and this should certainly not render the amount of the assessment unascertainable, as it would if it "is ascertained" only when the lot-owner receives the notice. The notice, however, is given, not for the purpose that the amount of the assessment shall be ascertained by it, but for the purpose that each lot-owner may, if he chooses, pay the whole of the assessment against his property at once, and before any bonds shall be issued, and thereby save interest. If he permits the bonds to be issued before he pays his assessment, he must then pay interest whether he pays the whole of the assessment at one time, or pays it in installments. Another provision of the

statute following immediately after the provision last above quoted, and as a part of the same section and of the same sentence, reads as follows:

"Or after the issuance of the bonds, by paying all the installments of the assessments which have been levied, and also the amount of unlevied installments, with interest on the latter at the rate of eight per cent. per annum, from the date of the issuance of the bonds to the time of maturity of the last installment."

We now come to the question whether the aforesaid protest renders the aforesaid assessments, and indeed all the proceedings subsequent to the protest, void. The plaintiffs claim that it does, while the defendant claims otherwise. The plaintiffs rely upon § 14 of the act relating to cities of the first class, which reads, as far as it is necessary to quote it, as follows:

"SEC. 14. When the mayor and council shall deem it necessary to pave or macadamize any street, lane, avenue, alley, or part thereof, within the limits of the city, for which a special tax is to be levied as herein provided, such council shall, by resolution, declare such work or improvement necessary to be done; and such resolution shall be published for four consecutive weeks in the official newspaper of the city; and if two-thirds of the owners of the property resident in the city, liable to taxation therefor, shall not within twenty days thereafter file with the clerk of said city their protest against such improvement, then such council shall have power to cause such improvements to be made, and to contract therefor, and to levy the taxes as herein provided; and the work may be done before, during, or after the collection of the special assessments, as may be deemed proper by the mayor and council." (Laws of 1887, ch. 99, § 5; Gen. Stat. of 1889, ¶ 558.)

The plaintiffs' petition, original and as amended, alleges that the protest was filed by the plaintiffs, but whether they were residents or not of the city or county of Leavenworth, or of the state of Kansas, is not shown. It also alleges that the protest was "signed by two-thirds of the property-owners liable for the tax to be paid for said street improvements"; but whether any one or more of such signers was a "resident

in the city" of Leavenworth, as required by the above-quoted statute, is not shown.   Indeed, it is not shown that anyone of such signers was even a resident of the state of Kansas.   Also the protest was only against paving, and was not against curbing, except that the signers understood that they were protesting against the curbing also.   In order that the protest should be of any value, the statute requires that it should be the pro-

**2. Protest—by whom.**   test of "two-thirds of the owners of the property resident in the city liable to taxation therefor," while the petition shows that it was merely the protest of two-thirds of the property-owners liable for the tax to be paid for said street improvements; and no mention of the residence of the protesters is made.   Now the city authorities may have disregarded this protest for the reason that the protesters were not residents of the city.   And the court below, in considering the demurrers to the petition and amended petition, may also have disregarded the protest for the same reason.   We are inclined to think that whenever the mayor and council of any city of the first class shall pass a resolution declaring it necessary to make particular street improvements, and shall publish the resolution for four consecutive weeks in the official newspaper of the city as provided by said §14 of the act relating to cities of the first class, and that two-thirds of the property-owners resident in the city liable to special taxation to pay for such improvements, shall within twenty days thereafter file with the clerk of the city their protest against the making of such improvements, that then the city authorities will not have any power or authority to cause such improvements to be made, and that any proceedings afterward had for any such purpose, or any assessment made to pay for such improvements, would be absolutely null and void, and the parties protesting would not be required under the aforesaid limitation contained in §1, chapter 101 of the Laws of 1887, to commence any action within thirty days after the making of the assessment to set aside the assessments or to defeat or avoid the same in order to relieve themselves from the payment of the same.   But it is not shown in the

present case that the parties protesting were residents of Leavenworth city, and hence the plaintiffs' petition, original and amended, with all the facts stated therein, does not state facts sufficient to constitute a cause of action. If the signers of the protest were in fact residents of the city of Leavenworth, and if they in fact constitute two-thirds of the owners of the property supposed to be liable for the payment of the aforesaid assessments, then we would think that the plaintiffs might upon such terms as would be just, be permitted by the district court to amend their petition by setting up the fact that the parties protesting were residents of Leavenworth city.

The judgment of the court below will be affirmed.

All the Justices concurring.