LOUIS HAMMERSLOUGH *et al.* v. THE CITY OF KANSAS CITY.

1. CITY—*Control of Street.* The findings of fact examined, and *held* sufficient to sustain the first conclusion of law by the trial court, to the effect that Central avenue, Kansas City, Kansas, is a street within the limits of said city, and under the control thereof.

2. ACTION, *Barred.* The findings of fact in this case show that the "assessment" for the improvement of Central avenue was "ascertained" November 22, 1889. *Held,* That the thirty-days' statute of limitations commenced to run at that time, and had fully run long before the plaintiffs commenced their action, October 20, 1890, and the action was therefore barred.

### Error from Wyandotte District Court.

ACTION brought by *Hammerslough* and about 40 others, to restrain the collection of certain taxes. Judgment for the defendant *City*, on November 17, 1890. The plaintiffs bring the case to this court. The opinion states the facts.

*Charles Daniels*, and *Brown, Chapman & Brown*, for plaintiffs in error.

*A. H. Cobb*, and *Hutchings & Keplinger*, for defendant in error.

Opinion by STRANG, C.: This was an injunction proceeding begun in the district court of Wyandotte county October 20, 1890, to restrain the collection of certain special assessments.levied against the property of the plaintiffs by the defendant, to pay the first installment of the amount assessed against said property for paving and curbing Central avenue, in said defendant city, and to declare the entire assessment void. The case was heard by the district court of Wyandotte county November 17, 1890. The court made special findings of fact and conclusions of law, and rendered a general judgment dissolving the injunction and taxing the costs to the plaintiffs, who bring the case here for review. There are a number of errors assigned in this case, and an almost innumerable number of sub-questions raised and discussed by

counsel for the plaintiffs in their brief, and in the oral argument before the commission. Several of the questions have been decided by this court in opinions recently reported, and are therefore taken out of the domain of disputed questions, and have become the settled law of the state. In the light of these decisions, there is but little to settle in this case.

The first question we desire to notice is raised by the plaintiffs' objection to the first conclusion of law by the trial court. We notice this question first, not simply because it relates to the first conclusion of law in the case and is the first error assigned, but because it raises a question that should be first settled. It raises the question whether or not Central avenue is a street within the defendant city. If Central avenue is not a street within said city, then the mayor and council did not and could not obtain jurisdiction over the same for paving or curbing, or for the purpose of other improvements. And if said avenue is not a street of said city, then this case should terminate here, and in favor of the plaintiffs. The conclusion of law referred to reads as follows:

"That the exclusive ownership and control of Central avenue is in the city, the parties mentioned in the petition as owning certain parts of said avenue having by their acts dedicated such pieces of land to public use."

The plaintiffs allege that this conclusion is erroneous. We do not think so. We think there is sufficient in the findings of fact of the court below which are unchallenged by the plaintiffs to fully sustain this conclusion of the court. In July, 1887, there was no street where Central avenue now is. About that time the Inter-State Consolidated Rapid Transit Railway Company opened up and graded its right-of-way from Mill street to Eighteenth street. Soon after, adjacent property on both sides was platted into additions by the owners along the line of said roadway, and in conformity to its course, and dedications were made to the city and county of sufficient ground on either side of the said right-of-way to constitute a roadway 80 feet wide, almost continuously, for the entire length of such avenue. And the findings further show that

said railway company, the Riverview Land and Improvement Company by its officers, and the other individuals who, it is alleged in plaintiffs' petition, own portions of said street, in their proper persons, acquiesced in the use and occupation of said avenue as a street by the defendant city. They permitted the city to build sidewalks along said street, and most of them joined in a petition asking the city to build such walks. They also asked the city to extend the water mains along said street, that they might connect therewith and obtain a supply of water; and again, the most of the parties who, it is alleged, own part of said street joined in a petition asking the city to extend said water mains; and all the parties stood by and saw the street curbed and paved by the city, without ever objecting thereto, or making any claim to the ground being so paved. All such parties are estopped now from claiming ownership in the lands constituting said street, and as the entire length of said street was taken into the city before it was paved, said avenue is a street of and within the limits of said defendant city, and, as such, is within the control of the mayor and council of said city. Such avenue being a street within said city, the mayor and council thereof might obtain jurisdiction over it for the purpose of curbing and paving the same, by taking the necessary statutory steps which, under the law, gives them jurisdiction over the streets of the city for that purpose. Did the mayor and council take such steps in this case, and obtain jurisdiction over Central avenue for paving purposes? The statute provides that they must pass and publish a declaratory resolution, declaring the necessity for paving the streets sought to be paved. Such a declaratory resolution was passed June 25, 1889, and published according to law. August 24, thereafter, ordinance No. 1001 was published, being an ordinance providing for the paving and curbing of Central avenue between Mill street and Eighteenth street. Afterward the city engineer prepared plans, specifications and estimates for curbing and paving said avenue. The contracts for said improvement were then let. Appraisers were appointed, and the property deemed liable

for the improvements was appraised, and on November 22, 1889, ordinance No. 1150 was passed and published, being "An ordinance apportioning and assessing the costs of paving and curbing Central avenue from Mill street to Eighteenth street upon the property liable for the payment thereof." Attached to this ordinance, and published with it in the official city paper, was a schedule or list of lots assessed, including those of the plaintiffs, for the purpose of the improvement of said avenue, with amount of the assessment charged against each lot.

In May, 1890, the work under the paving contract was complete, and the city engineer accepted the same. In August, 1890, the work on the curbing contract being completed, the city engineer accepted the work under that contract, and made his final report to the city council, which was accepted by that body, and the contractors fully paid for their work so done. In August, 1890, ordinance No. 1651, being "An ordinance levying a tax to create a revenue to pay the maturing principal and accruing interest on internal-improvement bonds issued for paving and curbing Central avenue from Mill street to Eighteenth street," was published. It thus appears that all the necessary conditions precedent to obtaining jurisdiction over said avenue for paving and curbing purposes were performed, and the council of said city obtained jurisdiction over said street for such purposes.

This case seems to have been brought under § 253 of the code; but this court has already determined that § 253 has nothing to do with a case of this kind. In the case of *Lynch v. Kansas City*, 44 Kas. 452, (same case, 24 Pac. Rep. 973,) after quoting from the opinion in the case of *City of Topeka v. Gage*, 44 Kas. 87, referring to the limitation clause in ¶ 590 of the General Statutes of 1889, it is stated: "With this broad and liberal interpretation of this statute, a conflict inevitably arises between it and § 253 of the code." And after referring to ¶ 590, containing the thirty-days' limitation clause, it is added:

"The plain intent of these various provisions is to cause

litigation, if any there is to be, to be commenced before the issue of the bonds, so as to avoid any uncertainty about their legality that might afterward affect their market value. The thirty-days' limitation, within which the assessments that are the basis of the bonds can be attacked, is a wise one, is reasonable as to time, and is of unquestioned validity in every respect. To give it force we must hold that it changes the time within which an action of this kind can be instituted under § 253 of the code, and leaves that section to apply only to illegal taxes and illegal charges. The word 'assessment,' as used in § 253 of the code, and in ¶ 590 of the General Statutes of 1889, means the specific amount charged on the property, and not the mere act of valuation."

In the case of *Marshall v. City of Leavenworth*, 44 Kas. 459, (same case, 24 Pac. Rep. 975,) the court held that—

"The limitation of thirty days within which an action can be brought to defeat or avoid a special assessment for street improvements under § 1, ch. 101, Laws of 1887, is constitutional and valid, and the time when the assessment is ascertained, and when the limitation commences to run, is when the ordinance levying the assessments, and designating the amount of the assessment levied upon each particular lot or piece of ground, is published and takes effect."

Following the rule so laid down, the thirty-days' limitation in this case commenced to run December 23, 1889—almost a year before the case was begun in the district court. (See, also, *Wahlgren v. Kansas City*, 42 Kas. 243; *City of Topeka v. Gage*, 44 Kas. 87; 24 Pac. Rep. 82; and *Lynch v. Kansas City*, 44 Kas. 452, 24 Pac. Rep. 973, referred to herein.).

This is not all the *laches* of the plaintiffs, while it is all that is, perhaps, material; yet, so far as any claim of equity is concerned, we may call attention to the fact that they not only waited until the thirty-days' statute had run, but they stood by and saw the contracts for paving and curbing said avenue let; saw the work being done thereunder; an ordinance passed and published providing for the issuance of bonds to raise the means to pay for the work; saw the bonds sold, the work under the contracts accepted by the city engi-

neer, his report thereof made to the council of the city, and by them approved, the contractors fully paid, and an ordinance passed and published levying a tax upon the property assessed for the improvement, to meet the maturing principal and accruing interest on said bonds, and then, after all this was done, still waited more than 30 days before commencing their suit. The plaintiffs have lost their rights by waiting too long. There was no reason why, when on November 22, 1889, ordinance No. 1150 was published, if property-owners felt aggrieved by the assessment therein made, they should not have commenced their proceeding to enjoin the city from proceeding further. If, as they now assert, 96 lots that should have been included among the number charged with the improvement of that street were left out of the assessment, that fact was as well known then as now, or at the commencement of this suit. This and all the other irregularities, short-comings and defects in the method of performing the work of curbing and paving were absolutely waived when the thirty-days' statute had run and they remained unchallenged. The things necessary in this case, to give the mayor and council of the defendant city jurisdiction over Central avenue for paving and curbing purposes, were the fact that Central avenue was a street within the limits of said city, the passing of the resolution declaring the necessity for the improvement, the making of plans, specifications and estimates for the work by the city engineer, the appraisement of the property charged with the expense of the improvement, and the passage and publication of the ordinances providing for paving and curbing said avenue, with a specification of the lots charged and the amounts assessed against each lot. This done, the council had jurisdiction of the street for paving and curbing purposes; and jurisdiction having attached, it could go ahead with the work unchallenged, unless, within thirty days from the publication of the ordinance ascertaining the assessment, suit was begun. Having held that Central avenue is a street within the limits of defendant city, and that the council of said city took the necessary statutory steps

to obtain jurisdiction over the same for paving and curbing purposes, and the plaintiffs' cause of action on the merits being barred by the express terms of the statute, as well as prior decisions of this court, we will not examine the numerous irregularities, defects and short-comings discovered and argued by plaintiffs in their brief.

We recommend that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.