Hoffmeyer v. Reed.

---

EMIL HOFFMEYER et al., *Appellants,* v. E. W. REED, as Mayor, etc., et al., *Appellees.*

No. 18,267.

SYLLABUS BY THE COURT.

1. INJUNCTION—*Sewer Tax—Assessment—City Ordinance.* The amount due on each lot or piece of ground liable for an assessment under section 1 of chapter 124 of the Laws of 1911 is ascertained when the ordinance levying the assessment is published.

2. CITY ORDINANCE—*When Publication is Complete.* Such ordinance was duly printed in a newspaper printed within the city. (Gen. Stat. 1909, § 1347.) The work, owing to a delay for certain copy, was begun about four o'clock P. M., April 4.

The copies for out of town subscribers were mailed in time to reach their destinations that evening. Substantially all the remaining copies bearing date April 4—about three-fourths of the issue—intended for city patrons, were mailed the following forenoon. Had any subscriber called at the newspaper office the evening of the 4th he could have received his paper. A number of the publisher's employees usually took their papers home the day they were printed. No attempt or intent purposely to avoid full publication on the day it was begun was shown or claimed. *Held,* that the ordinance should be deemed published on that day.

Appeal from Jackson district court. Opinion filed December 7, 1912. Affirmed.

*M. A. Bender,* of Holton, *T. F. Garver,* and *R. D. Garver,* both of Topeka, for the appellants.

*Guy L. Hursh,* and *E. R. Sloan,* both of Holton, for the appellees.

The opinion of the court was delivered by

WEST, J.: The plaintiffs sued to enjoin the collection of a sewer tax. The defendants prevailed. The only question involved is whether the suit was begun before the expiration of thirty days from the time the amount due on each lot liable for assessment was ascertained, as provided by section 1 of chapter 124 of the Laws of 1911. The plaintiffs contend that the ascertainment dates from the actual publication of the ordinance levying the tax. The defendants insist that it dates from the actual ascertainment or decision by the city as to the amount each tract is to bear. The action was begun on the 4th of May, 1912. The report of the appraisers was filed July 29, 1911, and showed the valuation placed on each lot and apportionment of the costs of the construction of the sewer to each lot. A notice was published by the city that on Monday, April 1, the mayor and council would meet at 7:30 P. M. at the council chamber to hear all persons and determine and consider all complaints from property owners touching

appraisements, at which time any corrections or modifications in the appraisement or apportionment of costs as should appear just, fair and equitable would be made.   The record of the council proceedings shows that on this date the meeting was held and certain changes were made in the appraisers' report, after which it was "accepted, approved and adopted."   On the next day, April 2, an ordinance was passed levying the assessment in accordance with the report as adopted. It was published in the *Holton Recorder,* but whether on the 4th or 5th of April the parties do not agree.

In *Marshall v. City of Leavenworth,* 44 Kan. 459, 24 Pac. 975, the question arose whether the time began to run from the publication of the ordinance or from receipt of the notice by the lot owner, and it was held that the ascertainment dated from the publication of the ordinance, and it was written into the syllabus that the time when the assessment is ascertained "and when the limitation commences to run, is when the ordinance levying the assessments and designating the amount of the assessment levied upon each particular lot or piece of ground is published and takes effect."   (Syl. ¶ 1.) In the opinion it was said:

"All the other irregularities are waived and cured by the plaintiffs' failure to commence any action within thirty days after the publication and the taking effect of the ordinance making the specific assessments upon each portion of the abutting property."   (p. 461.)

*City of Topeka v. Gage,* 44 Kan. 87, 24 Pac. 82, was cited, and it was there said:

"The ordinance fixed the rate of the levy, and all that remained to be done was to compute the amount of the assessment upon each lot or piece of ground at the rate designated in the ordinance; and the ordinance directed the clerk to make the computation.   We think the clerk had authority to make the computation, and the assessment so made was properly ascertained."   (p. 90.)

*Hammerslough v. Kansas City,* 46 Kan. 37, 26 Pac. 496, quotes (p. 41) the Marshall case as establishing the rule that the limitation begins to run when the ordinance is published, and so holds. *Kansas City v. Gibson,* 66 Kan. 501, 72 Pac. 222, and *City of Leavenworth v. Jones,* 69 Kan. 857, 77 Pac. 273, treat the matter as thus settled. With the law thus repeatedly declared it must be presumed that the legislature of 1911 in reënacting this portion of the statutes considered in these opinions intended it to bear this construction. The language of the statute is:

"No suit to set aside the said special assessments or to enjoin the making of the same shall be brought, nor any defense to the validity thereof be allowed, after the expiration of thirty days from the time when the amount due on each lot or piece of ground liable for such assessment is ascertained." (Laws 1911, ch. 124, § 1.)

How could a suit be brought to enjoin or question the validity of an assessment before it had been made? An assessment can be made by ordinance only. (Gen. Stat. 1909, § 1374; Laws 1911, ch. 124, § 1.) And how can an amount be "due" until an assessment has been made? We hold, therefore, that the time began to run from the publication of the ordinance.

The statute requires the ordinance to be "published in some newspaper printed within the city, or if no paper be published in said city, then in some paper having a general circulation therein." (Gen Stat. 1909, § 1347.) The ordinance was printed in the *Holton Recorder* of April 4, but it appears that on that date the issue was late, that the press was started about 4 P. M. and the issue of the paper for certain towns outside of the city was run off and deposited in the Holton post office about 6 P. M.; that substantially the remaining three-fourths of the regular issue of that date was not delivered for mailing until April 5, up and until about the noon hour; that those mailed to the towns mentioned were deposited in time to reach their

destination upon the evening of the 4th. The publisher was not clear whether there were any papers delivered at the post office for any of the Holton subscribers on that date or not, but stated that if a subscriber had called that evening and asked for his paper it would have been given him; that he had seven or eight employees residing in Holton and that it was customary for them to take their papers home with them the day they were printed and published. It is argued by the plaintiffs that this did not amount to a publication within the letter and spirit of the statute until the 5th when the papers were mailed to the Holton subscribers; that the object of publication was to inform those interested in the subject matter, and if the paper were printed within the city but circulated entirely outside it would not be a publication, and that the publication of a newspaper means an entire edition or at least that part which circulates among the subscribers affected by the matter in question. It is suggested that the copies for the Holton subscribers were not even printed until April 5, but the abstract does not so show. In the affidavit of the publisher he stated that he did not recall whether any of such issue for circulation in the city were taken to the post office that evening or not but if so they were not delivered earlier than 6 P. M., and if any papers for circulation in Holton were delivered that evening it was a small part of the issue which generally circulated there.

The statute (Gen. Stat. 1909, § 1347) requires the publisher to prefix to every ordinance a line in brackets stating correctly the date of such publication, which in this case was given as April 4. It was held in *Davis v. Huston,* 15 Neb. 28, 16 N. W. 820, that the paper will be presumed to have been published on the day of which it bears date. This presumption may of course be overcome by proof, and the question here is whether it was so overcome in this case. There is no doubt that the paper was printed in Holton, that the copies for

outside subscribers were mailed on the 4th, and while it appears that the greater portion of the copies for the Holton subscribers were not mailed on that date it does not affirmatively appear that they were not printed on that date or that a few did not then reach local patrons. The plaintiffs cite *Pratt v. Tinkcom,* 21 Minn. 142, holding that a notice appearing in only one-sixth of the whole number of copies of an edition is not published within the meaning of the statute, and *Davis v. Huston,* supra, to the effect that the publication was deemed complete upon the distribution of the paper, and other cases bearing less directly upon the question.

In *State of Iowa v. O. & C. B. Ry. Co.,* 113 Iowa, 30, 84 N. W. 983, 52 L. R. A. 315, the supreme court of Iowa decided that a publication in an extra edition and of fifty or a hundred copies at eleven o'clock at night and not mailed to subscribers or otherwise distributed except as sold to parties directly interested, was not an official publication. *Jackson v. Beatty,* 68 Ark. 269, 57 S. W. 799, held that a statute requiring the notice to be published in a newspaper printed in the county, if there be one having a *bona fide* circulation therein which shall have been regularly published in the county for one month next before the date of the first publication, was not complied with by an insertion in a paper not shown to have been printed or published in the county for the proper length of time; that printed and published as there used were synonymous, and a showing of a *bona fide* circulation in the county did not amount to proof of publication therein. In *Nebraska Land, Stock-growing & Investment Co. v. McKinley-Lanning Loan & Trust Co.,* 52 Neb. 410, 72 N. W. 357, the statute required the notice to be published in some newspaper printed in the county, and it was decided that the word published was synonymous with the word printed, and an affidavit that the newspaper was published in the county was therefore deemed sufficient. In other words, if the

Hoffmeyer v. Reed.

paper was published within the county, this satisfied the requirement of having been printed therein. In *Rose v. Fall River Five Cents Savings Bank,* 165 Mass. 273, 43 N. E. 93, the publication was required to be in a newspaper published in the city or town where the mortgaged premises were situated. A paper having the same contents as another of a different name but a different heading and date line was printed in Fall River and a few copies of it were sent to Dighton, where the premises were located, to regular subscribers or for sale and distribution. It was held that the newspaper was published in Fall River and that the word published referred to the home office of the paper where there was but one place of management and whence the paper was given to the world so far as it had regular subscribers. "Publish" has been thus defined: "To make known what before was private; to put into circulation." (7 Words and Phrases, p. 5847.)

Applying the latter meaning it was held in *North Baptist Church v. Orange,* 54 N. J. Law, 111, 22 Atl. 1004, that a notice required to be published in a newspaper printed in German must be in German and when printed in English it would be merely printed but not published.

A notice in English in a German newspaper was held good in *Richardson v. Tobin,* 45 Cal. 30. A newspaper was in *City of Cincinnati, etc., v. Bickett and Purcell,* 26 Ohio St. 49, decided to mean a publication in the English language. A similar ruling was made in the case of *Road in Upper Hanover,* 44 Pa. St. 277.

But nothing in these authorities or any that we have been able to find impels us to go further than required by the language of the statute, which prescribes that the ordinance shall be published in a newspaper printed in the city, if one be printed there. The paper was printed within the city. The publication of the issue of April 4 was in good faith begun on that day and although a majority of the copies were not actually

24—88 KAN.

delivered or put in circulation until the next forenoon it was designated and known as the paper of April 4, the publication of which actually began, and under ordinary circumstances would have been completed on that day. While the mere printing of the ordinance in an issue of the paper never circulated would not be a publication, still when the act of publication is begun on the proper day and owing to unusual conditions not completed until the forenoon of the following day, it is more technical than reasonable to consider the publication as made on the second day rather than on the one preceding. The court is of the opinion that this was a sufficient compliance with the statute.

The judgment is affirmed.