THE ASHLEY REALTY COMPANY, INC. *v.* THE METRO-POLITAN DISTRICT.

MALTBIE, C.'J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued December 6, 1945—decided January 29, 1946.

*W. Arthur Countryman, Jr.,* for the appellant (defendant).

*Louis M. Schatz,* with whom, on the brief, was *John P. Cotter,* for the appellee (plaintiff).

JENNINGS, J. This action to quiet title was brought under the provisions of General Statutes, § 5035, to test the validity of a lien for benefits assessed by the defendant. The latter in its answer claimed damages in the amount of the lien and interest. The trial court found the lien to be void and gave judgment for the plaintiff as regards the claim for damages in the answer.

The defendant is a municipal corporation created by 20 Special Laws 1204 and has a limited jurisdiction in Hartford and certain neighboring towns. Section 60 (p. 1224) of the act provides that assessments for benefits for public improvements shall be a lien on the land benefited from the time of the passage by the district board of a vote laying out or ordering the construction of the improvement, provided that a

caveat shall, within thirty days, be entered in a record kept by the district clerk, but that the lien shall not remain in force for a longer period than three months from the date of the last publication of the notice of final layout or completion of the improvement unless the bureau of public works of the district "shall within that time, lodge with the town clerk of the town wherein the land lies, for record, a certificate signed by the clerk of said bureau."

The finding, with such corrections as are required, may be summarized as follows: The first schedule of assessment was published September 30, 1939. On November 18, 1939, the defendant duly filed a caveat with the district clerk, claiming a lien as of November 13, 1939, and it was entered on his records. The plaintiff bought the property on March 15, 1940, after having the title searched. It had no actual notice of the caveat. The construction of the sewer, the improvement in question, was completed on or about October 24, 1940, and the date of the last publication of notice of that completion was October 28, 1940.

On January 27, 1941, within the three-month period designated by the act, the clerk of the defendant took a number of certificates of lien, including the one in question, to the office of the town clerk of Hartford, in which town the land lay. He did not visit that part of the town clerk's office used by the public but went into the office of the assistant town clerk. He deposited the certificates on the desk of the latter, in his presence, indicating that he was depositing certificates of lien for the defendant. He left the office without paying or offering to pay the recording fees nor was such payment sought by the assistant town clerk. Thereafter the town clerk sent the bureau of public works of the defendant a bill for the recording of all of the certificates of lien which had been depos-

ited on the desk of the assistant town clerk. The bill was dated January 27, 1941, the date of the deposit of the certificates, and was paid by check dated February 14, 1941. The trial court concluded, in effect, that the° certificate in controversy was neither lodged for record nor recorded until February 18, 1941, when it was stamped "Received Feb. 18, 1941, 11:11 a.m., and recorded in the records of the town of Hartford."

General Statutes, § 321, provides, in part, that "the town clerk shall, on receipt of any instrument for record, write thereon the day, month, year and time of day when he received it, and the record shall bear the same date and time of day; but he shall not be required to receive any instrument for record unless the fee for recording it shall be paid to him in advance." The plaintiff claims that payment of the recording fee was a condition precedent to the sufficient filing of the certificates. The defendant claims that by leaving the certificates with the assistant town clerk under the circumstances described it performed its entire duty and that in the absence of any request for payment it was not required to pay in advance.

The act provides that the lien shall not continue more than three months unless the bureau of public works shall, within that time, lodge the certificate for record. It follows that the lien is continued if the certificate is lodged for record within the time limited. To lodge is "To place or deposit for safeguard or preservation; as, to lodge money or records in a place of deposit." Webster's New International Dictionary (1936). The certificate was lodged for record, therefore the lien was continued. No other reasonable construction of the meaning of the act is possible. It does not contain the limitation in the recording act (General Statutes, § 5010) that "No conveyance shall be effectual to hold any land against any other person

but the grantor and his heirs, unless recorded on the records of the town in which the land lies." The defendant did everything it was required to do by the act. *Oats* v. *Walls*, 28 Ark. 244, 248; *Ridley* v. *McGehee*, 13 N. C. 40, 45. Under the circumstances of this case, the payment of the recording fee was not a condition precedent to the lodging of the certificate for record. See *Butchers' Ice & Supply Co.* v. *Bascom*, 109 Conn. 433, 441, 146 Atl. 843; *Livingston Finance Corporation* v. *Baudin*, 10 La. App. 17, 18, 120 So. 401; *Lucas, Sergeant &c.* v. *Clafflin & Co.*, 76 Va. 269, 281; *American Exchange National Bank* v. *Colonial Trust Co.* (Tex. Civ. App.), 186 S. W. 361. The trial court erred in finding the lien invalid.

The defendant filed an answer in which it claimed judgment for the amount of the lien with interest and lien fees. This was treated by the parties and the court as though it had been entitled a counterclaim. If we assume without deciding that a counterclaim for money damages is proper in a suit to quiet title and that the defendant can sue in personam and is not restricted to its remedy against the real property, it still cannot recover against the plaintiff. It is not questioned that the caveat correctly stated the time when the lien attached as November 13, 1939. See *Dann* v. *Woodruff*, 51 Conn. 203; *Tomes* v. *Thompson*, 112 Conn. 190, 194, 151 Atl. 531. The plaintiff took title on March 15, 1940. The work was completed on or about October 24, 1940. The questions on this phase of the case are: Was there a personal obligation to pay the assessment and, if so, when did it come into existence? Section 55 of the charter, 20 Special Laws 1222, provides in part: " . . . said board may assess the . . . expense . . . upon persons whose property is . . . specially benefited thereby, and estimate the proportion of such expense which such persons shall

respectively defray, or enforce the collection of the same, or may, if it shall deem it advisable, assess the expense of any such public work directly upon land benefited. . . ." It thus distinguishes between such an assessment and the imposition of a lien on the land.

"The party against whom a tax is assessed is directly liable for the tax and his duty [to pay it] is clear." *Middletown Savings Bank* v. *Bacharach,* 46 Conn. 513, 524. The duty may, however, devolve upon other parties who have purchased the property subject to tax; the remedies of collection from those originally liable and by foreclosure of the lien are cumulative, and the taxing authority may pursue either or both. Ibid.; *Bridgeport* v. *Equitable Title & Mortgage Co.,* 106 Conn. 542, 547, 138 Atl. 452. The cases just discussed dealt with regular taxes, but the same principles apply to liens for municipal assessments. *Sperry* v. *Butler,* 75 Conn. 369, 374, 53 Atl. 899. If the provisions of the defendant's charter are read together, with the general purpose of the legislation in mind, it is clear that the obligation to pay arose when, by vote of the board, the layout was made and the construction ordered. It is at that time that the assessment is laid and it is from that assessment that an appeal, if any, must be taken. 20 Spec. Laws 1222, § 58; *Reiley* v. *Waterbury,* 95 Conn. 226, 111 Atl. 188; and see *Hoffmeyer* v. *Reed,* 88 Kan. 363, 366, 128 Pac. 383. The latest time when the obligation to pay could arise would be when the lien attached. Both dates in the case at bar antedate the plaintiff's purchase. The lien could be enforced against the land purchased subsequently; the personal obligation could not be enforced against the plaintiff, a subsequent purchaser. *Middletown Savings Bank* v. *Bacharach,* supra; *Hartford* v. *Poindexter,* 84 Conn. 121, 136, 79 Atl. 79. The situation is similar to that

which obtains when a person purchases property subject to a mortgage without assuming the mortgage. *Lewis* v. *Culbertson*, 124 Conn. 333, 338, 199 Atl. 642. General Statutes, § 1439, merely fixes the time when the assessment is collectible, and § 60 of the charter, 20 Special Laws 1224, conforms thereto. Since the plaintiff bought subsequently to the date when the personal obligation to pay arose, it is not personally liable.

There is error in part, the judgment is set aside and the case is remanded with direction to enter judgment that the lien is valid, and for the plaintiff on the counterclaim.

In this opinion the other judges concurred.