THE STATE OF KANSAS, *ex rel. A. A. Godard, Attorney-General,* v. H. M. DOWNS *et al.* .

### No. 11461.

CITIES—*Special Act for Kansas City—Held Unconstitutional.* Chapter 4, Laws of 1898, being "An act providing for the government, management and control of the fire and police departments in cities of the first class having a population of over forty thousand inhabitants," etc., is a special act conferring corporate powers upon Kansas City alone, and is therefore in violation of sections 1 and 5, article 12, of the constitution, and is void.

Original proceedings in *quo warranto.* Opinion filed July 8, 1899. Judgment of ouster against defendants.

*A. A. Godard,* attorney-general, *F. D. Hutchings,* city attorney, *T. A. Pollock,* city counselor, *W. H. McCamish, J. F. Getty,* and *Samuel Maher,* for plaintiff.

*Angevine & Cubbison, Silas Porter,* and *Hutchings & Keplinger,* for defendants.

The opinion of the court was delivered by

DOSTER, C. J. : This is an action of *quo warranto* to try the right of defendants to hold the offices and exercise the rights and powers of police and fire commissioners of Kansas City, under the authority of chapter 4, Laws of 1898. Such portions of the act as are material to be quoted are as follows :

" SECTION 1. In all cities of the first class having a population of forty thousand inhabitants or more, according to the census of the United States or of the state of Kansas or of such city, the government, management and control of the police and fire departments shall be in a board of fire and police commissioners, consisting of three commissioners of fire and police, elected and to hold office and be succeeded and empowered as hereinafter provided.

The State v. Downs.

"SEC. 2.  The legislature shall divide each city of the first class having a population of forty thousand inhabitants or more into three fire and police commissioner districts, such districts to be as nearly equal as possible, and to be composed of not less than one whole ward each, and no ward of such city to be divided and part thereof in a district different from the whole ward.  That said three commissioners of fire and police shall be elected one from each of said districts in such city.

"SEC. 3.  That for the purpose of this act the city of Kansas City, Kansas, is divided into fire and police commissioner districts, as follows : The first district to be composed of the first and second wards of said city ; the second fire and police commissioner district to be composed of the third and fourth wards of such city ; the third fire and police commissioner district to be composed of the fifth and sixth wards of such city.

"SEC. 4.  That on the first Tuesday after the first Monday in April, 1899, the next general city election, there shall be elected in each city herein provided for three fire and police commissioners, whose terms of office shall be as follows, to wit : The commissioner of fire and police elected from the first district to hold office for a term of one year, or until his successor is elected and qualified ; the commissioner of fire and police elected from the second district to hold office for a term of two years, or until his successor is elected and qualified ; the commissioner elected from the third district to hold office for a term of three years, or until his successor is elected and qualified ; at the expiration of which respective terms of office of the said fire and police commissioners in each of said districts respectively, and every three years thereafter, a commissioner of fire and police shall be elected to hold office for a term of three years, or until his successor is elected and qualified.

"SEC. 5.  That any city herein provided for extending its limits, and creating additional wards which are not included in the districts provided for by the legislature, the mayor and council of such city shall add such wards as are not wholly included in fire and

commissioner districts already created to such district or districts as they may see fit; provided, that no city shall at any time be divided into more than three fire and police commissioner districts.

"Sec. 6. That any city not herein provided for which shall become a city of the first class shall with a population of forty thousand inhabitants, if the legislature has failed to divide the same into districts, elect three fire and police commissioners at large, whose term of office shall be two years, unless before the expiration thereof said city shall have been divided into districts, and commissioners elected from such districts, and such city shall continue to elect such commissioners every two years until the legislature shall divide such city into districts."

It is contended by the state that the above-quoted portions constitute a special act conferring corporate powers and are repugnant, therefore, to section 1, article 12, of the constitution, which declares that "the legislature shall pass no special acts conferring corporate powers," and section 5 of the same article, which ordains that "provision shall be made by general law for the organization of cities, towns, and villages." Two questions are involved in this contention: (1) Are the powers conferred "corporate" within the meaning of that word as used in the constitution? (2) If so, is the act a special one? The latter of these questions, much more than the former, has been pressed upon our attention. However, the negative of the former has been more than suggested through the citation of cases which, if applicable, would seem to place the powers conferred by the act under consideration without the list of those called "corporate" within the constitutional meaning. Therefore, in order to a clear understanding of the case, it will be well to notice the question first stated.

In *Beach v. Leahy, Treasurer*, 11 Kan. 28, it was held

that a special act authorizing a school district to issue bonds to build a schoolhouse was not unconstitutional, because only public corporations were included within the scope of article 12 of the constitution, whereas school districts belong to that class of political organizations called *quasi* corporations. Of these and the like, Mr. Justice Brewer, in the case cited, remarked :

"They are denominated in the books and known to the law as *quasi* corporations, rather than as corporations proper. They possess some corporate functions and attributes, but they are primarily political subdivisions — agencies in the administration of civil government,— and their corporate functions are granted to enable them more readily to perform their public duties. The legislature have created the regents of the agricultural college and the regents of the state university bodies corporate and given them certain corporate powers (Gen. Stat., p. 75, § 3 ; p. 1100, § 6), yet are they thereby inhibited from special legislation concerning them ? Giving corporate capacity to certain agencies in the administration of civil government is not the creation of such an organization as was sought to be protected by article 12 of the constitution."

After explaining as above the character and functions of the class of political entities called *quasi* corporations, the learned justice proceeded, partly in his own language and partly by quotations from other authorities, to state the differing character and functions of municipal corporations or cities. Among other things he said :

"'A municipal corporation proper is created mainly for the interest, advantage and convenience of the locality and its people. A county organization is created almost exclusively with a view to the policy of the state at large for purposes of political organization and civil administration in matters of finance, of education, of provision for the poor, of military organiza-

tion, of the means of travel and transport, and especially for the general administration of justice.' Dillon in his late and elaborate treatise on Municipal Corporations, after noticing the distinction, draws attention to one fact which will help to make it clearer. 'The primary and fundamental idea,' he says, 'of a municipal corporation is an agency to regulate and administer the internal concerns of a locality in matters peculiar to the place incorporated, and not common to the state or people at large.' "

From the above it appears that municipal corporations, or that class of public agencies whose powers are corporate and which cannot, therefore, be conferred by special act, have a limited sphere of operation as to locality and as to subject-matter of authority. These agencies are designed to conserve and regulate those local and peculiar interests which arise and exist only in densely populated places or districts and with which the general public has little or no concern. They may be and often are, as special agencies, entrusted with the discharge of some one or more of the general functions of government, as, for examples, the establishment and maintenance of schools, the collection of revenue, the administration of justice ; but the primary purpose of their creation is inclusive only of the special concerns of those agglomerations of population, the close and constant interrelation of whose units begets conditions and necessities beyond those of the general mass. Among such concerns are sewerage, the supply of water, the prevention of fires, and the like. These considerations make the cases of *Beach v. Leahy, Treasurer,* supra, and *Knowles v. Board of Education,* 33 Kan. 692, 7 Pac. 561, and other like cases cited by counsel for defendants, distinguishable from this case. The powers conferred by the acts involved in those cases were political ; that is, the acts

in question were in execution of one of the public policies of government and not in execution of the special and internal affairs of a prescribed locality. Education is an interest of the whole state ; a police and fire department for a city, of the city alone. The one may be administered through *quasi*-political agencies, the other only through agencies corporate in character. It will thus be seen that the act in question and partially quoted above assumes to confer powers of the last-mentioned character. The omitted portions provide an elaborate system of organization and government of the police and fire departments of the cities falling within their purview.

The question now arises : Is it special in its nature? Does it confer upon a specially named or specially designated city or cities the corporate power to maintain a police and fire department in a manner and under regulations different from other like cities? Within the former decisions of this court and within its own plain provisions it does. Every question necessary to reach this conclusion has heretofore been considered and decided in *City of Topeka v. Gillett*, 32 Kan. 431, 4 Pac. 800. The act is made to apply alone to cities of the first class having populations of 40,000 or more. We take judicial notice of the census returns and, therefore, of the fact that there is but one city in the state of that population — Kansas City. This of itself would not be sufficient to bring the act within the constitutional objection if its operation were not in some particulars limited by its own language, and in others by necessary effect, to Kansas City. An act general in its provisions, but which can presently apply to only one city on account of there being but one of requisite population or other qualification, but which was designed to, and can in all sub-

stantial particulars apply to other cities as they become possessed of the requisite population or other qualification, cannot be regarded as a special act. The act in question, however, while general in its terms as to nearly all matters, makes special provision for Kansas City different from any other city hereafter to come within its scope. The vice of the act is that its general provisions can have no application to any other city than Kansas City, because it is the only one in the state having 40,000 population, while that city can secure the benefit of these general provisions only through the operation of a special dispensation made in the act in its behalf.

Section 2 of the act ordains that "the legislature shall divide each city of the first class having a population of 40,000 inhabitants or more into three fire and police commissioner districts," etc. As a command to future legislative assemblies, as well as to the one enacting the bill, this direction is, of course, an impotent *fiat*. It has absolutely no force or meaning, and as a part of the general scheme of the act may be put entirely out of view. Section 3 then divides Kansas City by name into three districts called police and fire commissioner districts. Section 4 following declares that "on the first Tuesday after the first Monday in April, 1899, the next general city election, there shall be elected in each city herein provided for three fire and police commissioners, whose terms of office shall be as follows," etc. The remainder of the section provides for varying terms of office for the commissioners elected at this first election, and thereafter for terms for them of three years' duration. This section is general in its language, but as the only city provided for, that is provided with election districts, or that could within the title of the

act be so provided, is Kansas City, the use of these general terms does not obscure to the slightest extent the evident fact that the section was intended as a requirement for an election in Kansas City alone, and thus to set in motion specially as to that city the machinery of a police and fire commissioners' government. Section 6 declares: "Any city not herein provided for which shall become a city of the first class shall with a population of 40,000 inhabitants . . . elect three fire and police commissioners at large, whose terms of office shall be two years." This requirement as to the length of term is hinged by other language in the section upon the non-observance by future legislatures of the mere *brutum fulmen* of section 2, before noted. For purposes of ascertaining the legal meaning of section 6 and giving it effect *in this act*, its language amounts to nothing more than a requirement to elect police and fire commissioners in cities other than Kansas City, as they shall grow into the requisite population, for terms of two years each, differing, therefore, in that respect from Kansas City.

Other provisions of the act might be observed indicative of a legislative sense of the fact that this measure was in reality designed to apply specially to Kansas City, and that its intricate and extended mechanism was to be a part of the enginery of local government there and nowhere else. As a municipal machine it can be set in motion only through the leverage of sections 3 and 4 before mentioned, and they, as seen, are exclusive to the one city. We do not mean to say that the mere fact that varying lengths of official term for the commissioners in cities which come or might be made to come within the operation of an act of the character of this one would of itself constitute it a special enactment. We look, however,

to this among other things for evidence *intra* the act to discover the legislative purpose. Counsel for defendants, however, contend that sections 3 and 4, which, as we have seen, apply specially to Kansas City, may be disregarded — eliminated, as it were — from the act and the remainder upheld. What we have said above sufficiently indicates our disagreement with this conclusion. Besides, the defendants hold their offices under the claimed authority of sections 3 and 4. They have no standing to defend this action except upon the basis of the constitutional validity of these sections, and hence it may be said that they are hardly in a position to raise the question. If sections 3 and 4 were to be stricken from the acts the defendants' claim of right to hold office would be at an end.

The questions above considered arise upon a demurrer to the petition of the state. We understand the whole case to be submitted upon this demurrer, and, therefore, in addition to the order overruling it, judgment of ouster as prayed for by the state is granted.