No. 33,457

T. J. Barker, Jr., Henry Stuckhoff, John Anderson, The Anderson Investment Company and Anna J. Barker, *Appellees*, v. The City of Kansas City et al., *Appellants*.

(70 P. 2d 5)

Opinion filed July 10, 1937.

*Alton H. Skinner, John C. O'Brien* and *William H. Towers,* all of Kansas City, for the appellants.

*N. E. Snyder,* of Kansas City, of counsel for petitioning property owners.

*C. W. Trickett* and *Joel E. Osborn, Jr.,* both of Kansas City, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: Plaintiffs, taxpayers of the city of Kansas City and of the benefit district sought to be created, brought this action No-

vember 12, 1936, under G. S. 1935, 13-1403 and 60-1121, to enjoin the city and its officials in their attempt to exercise the power of eminent domain to establish parking areas in certain blocks of the city and to levy certain assessments upon the property of plaintiffs to pay the costs thereof. After an answer and reply had been filed defendants moved the court, pursuant to G. S. 1935, 60-2904, to try the issues of law in advance of the trial of issues of fact. This was done by three district judges sitting *in banc*. After considering the pleadings and exhibits and the arguments of counsel the court made sixteen findings and conclusions of law. Twelve of these were adverse to the contentions of defendants, and from these they have appealed; four were adverse to the contentions of plaintiffs, and from these they have cross-appealed. It will be well to summarize the pleadings.

Plaintiffs allege that they are citizens and residents of Kansas City and own property therein, and are taxpayers; that the city of Kansas City is a municipal corporation, with a population exceeding 120,000, and the names of its officers are given; that Minnesota avenue is an east-and-west business thoroughfare of the city, and State avenue is the first street north of it, and that each of these streets previously had been designated and established as a main arterial trafficway under the laws of the state; that Armstrong avenue is the first and Ann avenue is the second east-and-west street south of Minnesota avenue, and that these streets are not main arterial trafficways; that the defendant city has been operating for many years under the planning commission law, and Minnesota and State avenues are zoned for commercial business by the planning commission and by the governing body of the city; that some of the business men on Minnesota avenue had complained to the governing body of the city of the lack or insufficiency of space for parking automobiles, which situation interfered with their business, causing customers to patronize outlying mercantile stores, especially such as had provided private parking space in connection with their business; that defendants, without a report or consideration by the planning commission, or any special commission or committee, determined to create five parking places, three on the south side of State avenue and two on the north side of Armstrong avenue; that to carry out that purpose the city enacted an ordinance, No. 28427, published July 16, 1936, entitled:

"An ordinance, condemning land for public use to provide facilities for the

general public use in connection with the use of streets and trafficways of the city, as a place to stop and store vehicles in the district described herein, zoned and used for commercial purposes and light industry; providing and describing a benefit district therefor; and directing the city attorney to institute proceedings as provided by law to acquire the land in this ordinance described by condemnation proceedings."

Section 1, in part, reads:

"That the following described land is hereby condemned and appropriated for the use of the city of Kansas City, Kansas, in providing facilities for the general public to use in connection with the use of the streets and trafficways of the city as a place to stop and store vehicles in the district herein described, zoned and used for commercial purposes and light industry, within said city of Kansas City, Kansas, to wit:"

Here follows the description of the property to be taken by eminent domain, described by lots and blocks. Section 2, in part, reads:

"It is found that all of the property within the following-described boundaries in Kansas City, Kansas, will be specially benefited by reason of the acquirement of said land, and proposed improvement, and all of the land within the following-described boundaries is constituted the benefit district, as provided by law, to wit:"

Here follows the description of the property constituting the benefit district described by metes and bounds.

"Except, the publicly owned property known as the post-office site, the old courthouse site, and the old county jail site, more definitely described as follows, to wit:"

Here follows the description, by lots and blocks, of the publicly owned property. Section 3 reads:

"The city attorney of the city of Kansas City, Kansas, is hereby ordered and directed to prepare and present in the name of the board of commissioners of the city of Kansas City, Kansas, a written application to the judge of the district court of Wyandotte county, Kansas, praying for an order appointing commissioners to make appraisement and assessment of damages arising from the taking and condemnation of said above-described real estate, and to do and perform all things in and about the procuring and recording of said order of appointment as required by law."

The accompanying plat shows the boundaries of the benefit district, the publicly owned land therein excepted, the location of the five proposed parking places, together with streets mentioned, which may help to visualize the plan of the project.

Plaintiffs alleged that defendants had no power or authority to institute the proceeding, to condemn the property, or otherwise make changes in the district, by reason of the fact that no planning com-

Scale 1" = 500'

A  Old H.S. Ground
B  Old Jail
C  Fed. Post Office
P  Plaintiffs Property
▨▨▨ Proposed Parking Lots

mission, or special committee or commission, had considered, acted upon, or recommended the change; that it was generally understood, and published interviews stated, the cost of the parking stations was to be borne by merchants and commercial firms and not to be a tax upon property; that ordinance No. 28427 did not provide nor request the appointment of commissioners to assess benefits to any property, or provide funds to pay for property taken for the parking areas; that in fixing the benefit districts defendants acted arbitrarily, unreasonably and unlawfully in that they fixed one benefit district for the five parking areas instead of a separate district for each, and that they zigzagged the boundaries of the benefit district so as to exclude and prevent benefit assessments against public property, in violation of law, and specifically excepted publicly owned property within the district, in violation of law; that the old courthouse and old jail properties are on the market for sale (the briefs advise that since the filing of this action these two properties have been sold to private parties), and if benefits are possible they are more benefited by reason of their location than other property within the district, and that the boundaries were zigzagged so as to exclude the city hall, police station and fire station, though one of the parking places (in block 131, on Armstrong avenue) was immediately across the street therefrom and would be used mostly by city officials and employees; that under the law of this state publicly owned property is required to be assessed for special benefits the same as if privately owned, and by excluding publicly owned property defendants unlawfully increased the amount assessed against privately owned property in the district; that State avenue is an established and designated main arterial trafficway, and under the laws of the state, widening or otherwise improving it by special assessment cannot be a burden upon any property south of Minnesota avenue, the parallel street immediately south of it, and that under the statutes the city at large must pay half the cost and the other half must be assessed against property abutting the street by blocks; that plaintiff's property is south of Minnesota avenue; that the city is without power to assess benefits for the three auto parks on State avenue to property south of Minnesota avenue, or to assess property north of Minnesota avenue for the two auto parks on Armstrong avenue. Plaintiffs alleged that the commissioners appointed by the district court unlawfully and without authority filed a report with the city clerk September 19, 1936, in which they assessed benefits to the

property within the alleged benefit district in the sum of $167,914, a copy of which report was attached to and made a part of the petition. This report discloses that on July 24, 1936, the city attorney presented to one of the judges of the district court a petition for the appointment of commissioners. This petition is not set out in the abstract, but upon it the judge appointed three commissioners.

On July 31, 1936, the commissioners published in the official city paper a notice entitled, "In the matter of condemnation of real estate for the purpose of providing public parking facilities." It recited:

"Notice is hereby given to all persons owning or in any way interested in the real estate hereinafter described or the proceedings of the board of commissioners of the city of Kansas City, Kansas, for the condemnation thereof. That the undersigned were on the 24th day of July, 1936, appointed by the honorable judges of the district court of Wyandotte county, Kansas, as commissioners to appraise the value of lands and to make and assess the other damages done to the owners of such property on account of the taking, appropriating and condemning of such property together with all the interest, right and title of all persons whomsoever therein by the city of Kansas City, Kansas, through its board of commissioners, for public parking purposes as described in ordinance No. 28427, the following-described real estate, to wit:"

Here follows the description by lot and block numbers of the real property to be taken by condemnation proceedings for parking purposes.

"And that the said commissioners were likewise appointed and directed to assess against the city of Kansas City, Kansas, the amount of benefit to the public generally and to assess the remainder of such damages against the following property which is in the benefit district which will be especially benefited by the proposed improvement, to wit:"

Here follows a description by metes and bounds of the benefit districts, with the exception of publicly owned property, as in the ordinance.

"The undersigned commissioners will upon the 12th day of August, 1936, at 10 o'clock a. m. of said day, meet at Sixth street and State avenue trafficway in the city of Kansas City, Kansas, and upon actual view appraise and value the lands taken and assess the other damages done to the owners of such property by such taking, appropriating and condemning, and will assess against the city the amount of benefit to the public generally, fixed as hereinbefore provided, and perform such other duties as is required of them by law.

"All persons desirous of being heard by said commissioners in relation to such proceedings are hereby notified to meet such commissioners at the time and place aforesaid and to then and there present to said commissioners any and all communications, statements, objections and complaints which they may

desire to have heard or considered by said commissioners relative to the condemnation of said real estate or any part thereof or the appraising, assessing or awarding damages therefor, or for the assessments against the property in the benefit district or benefits by reason of such taking, appropriation and condemnation."

The commissioners filed their report with the city clerk September 19, 1936, and it was marked, "Approved by the Board of Commissioners September 29, 1936." In this report it is stated that on July 29, 1936, they duly qualified as such commissioners by taking and subscribing their respective oaths; that thereafter they—

". . . did give to the owners of the property sought to be taken at least ten days' notice in writing of the time and place where the damages would be assessed by reason of taking of said property, which notice was given by one publication in the official city paper, as required by law. . . . That thereafter and at the time and place fixed in said notice, . . . the undersigned commissioners did meet . . . and on actual view did appraise the value of the lands taken and assessed the other damages to the city at large by such appropriation by reason of the taking, appropriation and condemnation by the city of Kansas City, Kansas, for use for public parking purposes of the real estate described in the schedule hereto attached. . . . That for the payment of such value and damages the commissioners did assess against the city at large the entire amount of the benefit to the public generally, and the remainder of such damages against the property in the benefit district which shall, in the opinion of the appraisers, be especially benefited by the proposed improvement, said property in the benefited district being shown on the attached schedule, . . . and said commissioners now report that they have set off, appropriated and condemned for the use and benefit of the city of Kansas City, Kansas, the lands described in the annexed exhibit 'A'; that the names of the owners of such lands, insofar as they are known, together with each owner's interest, was ascertained and his damages separately assessed insofar as his title could be ascertained from the office of the register of deeds of Wyandotte county, Kansas, all of which is shown in the annexed schedule, marked 'Exhibit A.'"

In exhibit C, attached to this report, is a list of the property within the benefit district, with the names of the owners against which benefits were assessed in stated sums. As it pertains to the plaintiffs this list shows that $1,250 was assessed against lots 8 and 9, block 130, T. J. Barker, Jr., owner; $1,250 against lots 12 and 13, block 130, Henry Stuckhoff, owner; $1,250 against lots 20 and 21, block 130, and $175 against lots 28 and 29, block 130, John Anderson and the Anderson Investment Company, owners; and $373.75 against the east 20 feet of lot 41 and lot 42 in block 130, Anna J. Barker, owner.

Plaintiffs alleged that the commissioners by their report found

that the general public was not benefited, and no benefits were assessed against the public at large; that the assessments of benefits were unlawful and void and without authority in law; that they were so unreasonable, arbitrary and showed favoritism to such an extent as to render the same void; that property contiguous to the parking places and either fronting or abutting thereon was assessed at nominal sums, while the property of the plaintiffs is not contiguous to, or even close to, any of the parking places, and is not benefited to any extent by the establishment of the parking places either by increased value or increased income. Plaintiffs alleged that all of the proceedings of defendants in the condemnation of land, and the attempt to create free parking stations and to assess private property in payment therefor is illegal and void for the reasons: (1) That there is no statutory authority to condemn property for free parking places; (2) that the matter was not considered by the planning commission, or by any special committee or commission, nor any recommendations made to defendant city, and in the absence thereof the city was without power and authority to proceed; (3) that the city has no authority to assess the property of plaintiffs in the sums specified, or any other sums for the purpose of providing free parking stations; (4) that defendants are attempting, by eminent domain, to take the private property for the benefit of private parties, namely, for the benefit of the business men on Minnesota avenue, in violation of the constitution and laws of the state; that to attempt to assess the property of the plaintiffs for the payment of the parking stations is an attempt to take property from the plaintiffs and bestow it upon private parties and for the special benefit of private parties, in violation of our constitution and laws; (5) that the proposed free parking stations are for the sole benefit of private parties and of no benefit to the city at large, and the commissioners specifically found that there was no benefit to the public generally, and therefore the assessing and levying of benefits upon the property of plaintiffs and others is unlawful and void; (6) that the power of eminent domain cannot be exercised for any purpose not expressly provided for by statute or by necessary implication, and there is no law authorizing the condemnation of property for a free auto parking station; (7) that there was no vote of the people authorizing the condemnation of property and no petition of property owners, as provided by statute. Plaintiffs alleged that on October 5, 1936, the clerk published a notice to bond buyers that

the city would receive sealed bids at the office of the city clerk until 7:30 o'clock p. m. October 8, 1936, for the sale of $167,914 of special improvement condemnation bonds, which notice recited:

"The bonds are issued for the purpose of paying the cost of lands legally condemned for the widening of certain streets and trafficways to provide facilities for the general public use in connection with the use of streets and trafficways of said city as a place to stop and store vehicles in a district zoned and used for commercial and light industrial purpose."

By the notice the bonds were to be dated October 1, 1936. The rate of interest, number, denomination and due date of the bonds were given, and it recited: "The bonds have been rejected by the Kansas State School Fund Commission," the city to furnish printed bonds and the final approving opinion of certain bond attorneys.

Plaintiffs alleged that the city passed and had published October 7, 1936, ordinance No. 28576, entitled:

"An ordinance providing for the issuance of special improvement condemnation bonds by the city of Kansas City, Kansas, in the sum of $167,914, for the purpose of paying the cost of lands legally condemned for the widening of certain streets and trafficways to provide facilities for the general public use in connection with the use of streets and trafficways of said city as a place to stop and store vehicles in a district zoned and used for commercial and light industrial purposes."

Plaintiffs alleged that the publication of the notice of the bond sale prior to the passage and publication of the ordinance "evidenced a rush and a scheme to issue and sell said bonds before any suit could be filed to test the validity of their acts"; that the bonds on the face recited they were issued for the purpose of paying for the condemnation of land "for the widening of certain streets and trafficways," and pledged the full faith and credit of the city for the prompt payment of the bonds and interest. Plaintiffs alleged, on information and belief, that the bonds were hurriedly sold to a local bank in an attempt to get them into the hands of innocent purchasers before suit could be filed, and that the city has on hand the money from the proceeds of the sale of the bonds, and has not expended the same, and that the money should be returned to the bank and the bonds taken up and canceled. Plaintiffs alleged the bonds were invalid on their face; that the recital in the bonds is incorrect in that they were not issued for the widening and improving of any street, and in fact no street is to be widened and improved; that State avenue previously had been widened by the city, and that there was no purpose or intention of making it wider; that our

laws do not permit the issuing of special improvement bonds for widening streets, but on the contrary provide for special tax bills where special benefits are assessed, and that the faith and the credit and resources of the city shall not be pledged or used in the payment of interest or principal of such tax bills; that upon the filing of the report of the commissioners pretending to assess special benefits defendants failed and neglected to publish any resolution or ordinance giving a description of the property assessed, or the amount thereof, and no hearing for the property owners to protest the assessment was had, all of which is required by law; that notwithstanding such failure defendant city, through its clerk, is threatening to certify the assessments to the county clerk to be placed upon the tax rolls and collected as other taxes against the property of plaintiffs; that defendants have not appointed any person, by resolution or otherwise, to assess the benefits of property within the district, and the acts of the board appointed by the district court are invalid. Plaintiffs further alleged that the condemnation of the land for the parking places is but a part of the expense which the city plans unlawfully to impose upon the property owners, which it is alleged will aggregate $300,000 or more, details of which are stated; that plaintiffs have no adequate remedy at law.

The prayer was for findings and judgment: (1) That the condemnation of the proposed free parking places was illegal and void; (2) that the proposed and described benefit districts be declared unlawful and void; (3) that the assessments imposed upon plaintiffs' property be held unlawful and the city clerk be enjoined from certifying them to the county clerk to be placed upon the tax rolls; (4) that the defendant city be enjoined from using the proceeds of the bonds for any purpose, and be ordered and directed to return the money to the holders of the bonds; (5) that defendant city be enjoined from making any assessment upon the property of plaintiffs for the payment of the bonds or interest thereon; (6) that the city be enjoined from spending any money, letting any contracts, or otherwise incurring any expense with respect to the proposed auto parking places; (7) for other and further judgment as may be right and proper in the premises; (8) and for costs.

Defendants' answer admitted allegations of the petition pertaining to parties, except it alleged lack of knowledge respecting the nature of plaintiffs' title to their real property and the amount of

encumbrances thereon, if any; admitted ordinances had been passed, notices published and proceedings had thereunder, as set forth in the petition, but alleged all this was authorized by law and done in harmony with law; and further alleged defendants were prompted to initiate and carry out these proceedings by certain petitions signed by merchants, business men and other residents of the city, filed with the city clerk in June, 1936, complaining of the lack or insufficiency of parking places for automobiles and asking the city to establish such places; admitted the defendant city by ordinance had provided a planning commission, and that Minnesota and State avenues by ordinance had been designated as main arterial traffic-ways and zoned as a light industrial district, and admitted that the commissioners appointed by the court did not find the city at large to be benefited by the taking of the property for public parking places by eminent domain, and assessed none of the benefits against the city. The answer contained a general denial of allegations of the petition not admitted; alleged the petition did not state facts sufficient to constitute a cause of action, or facts sufficient to show the right of plaintiffs to maintain the action; alleged the proceeding to condemn the property for parking areas had gone so far that the city was compelled to take and pay for the property sought to be taken, had sold its bonds and had the proceeds thereof, and that the court was without power or authority to enjoin acts fully performed; that plaintiffs had legal notice the parking areas were to be taken by eminent domain, and that privately owned property in the benefit district was to be assessed benefits for the cost thereof, and that they stood by and did nothing until after time had passed so the city could not abandon the project and was compelled to go forward and complete it, for which reasons it was alleged plaintiffs were guilty of laches and were estopped from prosecuting this action. General allegations were made as to the city's duty and its rights respecting streets and traffic. It was specifically denied plaintiffs had no adequate remedy at law, and was alleged they had the right of appeal under G. S. 1935, 26-205; and the answer specifically pleaded the thirty days' statute of limitations (G. S. 1935, 13-906).

In their reply plaintiffs denied defenses pleaded in the answer, specifically denied they were guilty of laches or estopped and alleged some facts relating thereto, denied they had an adequate remedy, or any remedy, by appeal, and denied the application of the thirty-days statute of limitations.

Judges of three of the divisions of the district court, sitting *in banc*, having considered the petition, answer and reply, with all exhibits, and the arguments of counsel, on January 7, 1937, made and filed their findings and conclusions of law, as follows:

"1. That the petition in this case states a cause of action.

"2. That the petition on its face is sufficient to give the court power, jurisdiction and authority to grant the relief prayed for.

"3. That plaintiffs have a right to maintain this action, by virtue of R. S. 13-1403 and R. S. 60-1121.

"4. That this action, at the time it was filed, was not barred by the statute of limitations.

"5. That the petition does not show on its face that the plaintiffs have been guilty of gross laches and want of equity.

"6. That even though plaintiffs might have appealed under R. S. 26-205, and under that section might have had a plain, adequate and complete remedy at law, yet they are not precluded from proceeding under R. S. 13-1403 or R. S. 60-1121. We are not, however, making a definite finding that plaintiffs could have appealed under and by virtue of R. S. 26-205.

"7. That the petition does not show on its face that the plaintiffs are attempting to enjoin the acts of a public body which have already been accomplished.

"8. That this court has the power to enjoin a performance by the governing body of the city of acts constituting a violation of the plain, mandatory provisions of law, and especially R. S. 26-209.

"9. That the city of Kansas City, Kansas, had authority under R. S. 26-201 to condemn private property for the purposes stated in ordinance number 28427.

"10. That the defendants have not become obligated to pay to the owners of the property condemned the amounts assessed by the commissioners, for the reason that the commissioners failed to proceed according to R. S. 26-202, and for that reason their proceedings were a nullity.

"11. That the governing body of the city had the power to proceed with the creation of parking stations without first submitting the matter to the planning commission for consideration.

"12. That there is no power of eminent domain conferred upon the city except in cases where there is a public benefit and a public necessity, to take and appropriate private property.

"13. The fact that no order, resolution or ordinance was passed by the board of city commissioners 'declaring it necessary' to appropriate the private property described in ordinance No. 28427, did not make the application to the judge of the district court for appointment of appraisers void, and did not render the acts of the appraisers a nullity.

"14. That chapter 133 of the Laws of 1927 did not restrict the operation of article 2, chapter 26 of R. S. 1923, insofar as it relates to the right of the city of Kansas City, Kansas, to condemn property for the purpose set out in ordinance No. 28427.

"15. That the petition does not show on its face that the plaintiffs are estopped by their acts from maintaining this action.

"16. From the pleadings and admitted facts, it appears—

(a) That the benefit district established by the defendants was arbitrary, unreasonable, unjust and void, for the reason that all public property, city, county and federal, was excluded from said benefit district;

(b) That under R. S. 26-202 the commissioners appointed by the judge of the district court failed to proceed in assessing benefits according to the terms of said section, and therefore the assessment as made by said commissioners is void;

(c) That the assessment by the commissioners appointed by the judge of the district court was arbitrary, unreasonable, unjust and void for the reason that no part of the assessment was assessed to the city at large."

Also, No. 17, as follows:

"17. In view of the findings we have made in this case and the further fact that the condemnation of property is but the beginning of an expense and an expenditure of many times the amount involved in the condemnation, the court deems it advisable, without request therefor, to, at this time, restrain and enjoin the defendant city from taking any other or further steps in regard to said parking stations until the final disposition of this suit."

Thereafter defendants moved the court to require plaintiffs to give bond in the sum of $20,000 as a condition precedent to granting the injunction mentioned in conclusion No. 17. Whereupon, counsel for plaintiffs stated in open court that plaintiffs did not ask for a temporary injunction, and did not intend to give a bond. "We will stand upon our rights in the matter." Whereupon, the court withdrew its conclusion No. 17.

Conclusions of law numbered 1, 2, 3, 4, 5, 6, 7, 8, 10, 12, 15 and 16 were adverse to the contentions of defendants, hence they have appealed; while those numbered 9, 11, 13 and 14 were adverse to the contentions of plaintiffs, hence their cross-appeal.

Defendants, as appellants in this court, argue four points: (1) That the action was barred by the thirty-days statute of limitations; (2) that plaintiffs are estopped and barred by their laches; (3) that the proceeding had progressed so far that the city had become the owner of the real property sought to be taken by eminent domain and obligated to pay for the same; and (4) that plaintiffs have an adequate remedy at law.

As to the statute of limitations, appellants rely upon G. S. 1935, 13-906, which reads:

"No suit nor action of any kind shall be maintained in any court to set aside or in any way contest or enjoin the levy of any special assessment for constructing or repairing any sidewalk, pavement, sewer or any other public improvement after the expiration of thirty days from the time the amount due on each lot or piece of ground liable for such assessment is ascertained."

While this is not a "sidewalk, pavement, or sewer," appellants argue this is "another public improvement," hence that the statute is applicable. A doubt intrudes as to whether this is a correct interpretation of the statute; but we shall not pause to determine that question. Appellants contend the "amount due on each lot or piece of ground" in the benefit district was "ascertained" when the commissioners appointed by the court filed their report with the city clerk September 19, 1936, and since the suit was not brought until November 12, 1936, that it was too late. Some language is quoted from the opinion in *State v. Nelson,* 126. Kan. 1, 266 Pac. 107, which, standing alone, tends to support this view. The quoted language was used by way of illustration or argument pertaining to the right of a condemning party proceeding under G. S. 1935, 26-201 *et seq.,* to abandon the condemnation proceeding. The statute now relied upon by appellants (G. S. 1935, 13-906) was not involved in that case, and nothing concerning it was attempted to be decided. Appellants' argument on this point apparently ignores G. S. 1935, 13-909, which reads: "All taxes and special assessments shall be levied by ordinance." In this case there was no ordinance which levied this special assessment upon property in the benefit district to pay the cost of the proposed parking places. We think the amount due on each lot or block of ground is ascertained, within the meaning of G. S. 1935, 13-906, when the ordinance making the assessment as required by G. S. 1935, 13-909, is published. Construing the sections of the statute together, as we think should be done, gives an ascertainable date with a published ordinance for the beginning of the running of the statute. Such a construction is in harmony with our previous decisions construing this and similar statutes. (*Marshall v. City of Leavenworth,* 44 Kan. 459, 24 Pac. 975; *Hammerslough v. Kansas City,* 46 Kan. 37, 26 Pac. 496; *Hoffmeyer v. Reed,* 88 Kan. 363, 128 Pac. 383; *Gardner v. City of Leavenworth,* 94 Kan. 509, 146 Pac. 1000; *Park Association v. City of Hutchinson,* 102 Kan. 488, 171 Pac. 2; *Buckwalter v. Duncan,* 126 Kan. 179, 267 Pac. 962; *Schenk v. Kansas City,* 134 Kan. 181, 5 P. 2d 842; *Alber v. Kansas City,* 138 Kan. 184, 25 P. 2d 364.)

Appellants contend plaintiffs are estopped or barred by their laches. They point out that ordinance No. 28427 was published July 16; that on July 31 the commissioners appointed by the court gave public notice of their appointment and the time, place and purpose of their meeting; that they filed their report with the city clerk Sep-

tember 19, and that the same was approved by the city commissioners September 29; that on October 5 the city clerk's notice to bond buyers was published; that the bond ordinance was published October 7, and the bonds sold, delivered and the proceeds received by the city October 8, and that this action was not brought until November 12. Laches and estoppel are principles applied by courts of equity to prevent injustices, not to create them. Normally one is not estopped or barred by his laches because of delayed action concerning a matter of which he did not know. There is much in the record to indicate plaintiffs did not know benefits were to be assessed against their real property for the cost of the parking places. In the petition it was alleged the general understanding was, and published interviews stated, that the cost of the project was to be borne by merchants and business men within a prescribed area, and not by tax on real property. The title to ordinance No. 28427 spoke of creating a benefit district, but made no mention of making assessments against real property therein, and section 3 of the ordinance directed the city attorney to present to the judge of the district court an application praying for an order appointing "commissioners to make appraisement and assessment of damages arising from the taking and condemnation of said above-described real estate, and to do and perform all things in and about the procuring and recording of said order of appointment as required by law." No directions were given to the city attorney to make an application for an order assessing benefits upon real property. The application made to the district judge is not before us. Neither it nor the judge's order appointing commissioners was filed with the clerk of the district court. No notice of any kind was given of the filing by the commissioners of their report with the city clerk, nor of its approval by the city commissioners ten days later. The contents of this report were not given to the owners of the real property in the district, nor published in any way, unless the filing of the same with the city clerk may be said to constitute a publication, and there was no ordinance levying special assessments for benefits, as required by G. S. 1935, 13-909. Obviously, the notice to bidders, the bond ordinance and the sale of the bonds were hurried. Many other items from the record might be mentioned, but we deem these sufficient to justify the conclusions of the trial court on this point.

Appellants next contend the condemnation proceeding had progressed to a point where the city was the owner of and obligated to

pay for the land condemned, citing again language used in *State v. Nelson*, 126 Kan. 1, 266 Pac. 107. What was there said bears only indirectly on the point now before us. More than that, it was said with respect to a valid condemnation proceeding, not one that was void for the many reasons that the trial court found this one to be void. Appellants do not complain of the conclusion of the trial court as to the invalidity of the proceedings, but as to that rely upon the thirty-days statute of limitations applying to invalid as well as irregular proceedings, citing *Park Association v. City of Hutchinson*, 102 Kan. 488, 171 Pac. 2, and other cases to the same effect.

Finally, appellants argue plaintiffs are not entitled to equitable relief for the reason that they had a plain, adequate and complete remedy at law by appeal under G. S. 1935, 26-205. By its wording this statute permits an appeal by "the owner of lands condemned." Certainly it is not "plain" that one may appeal who is not the owner of land condemned but who owns land against which benefits have been assessed. Then an appeal under this section by the owner of land condemned raises only the question of the amount to be paid. (*State v. Nelson*, 126 Kan. 1, 266 Pac. 107.) This would be inadequate and incomplete with respect to the issues here involved. We conclude that none of the points contended for by appellants is well taken.

Turning now to the cross-appeal of the plaintiffs. They complain of the trial court's conclusion of law No. 9, that the city had authority under G. S. 1935, 26-201, to condemn private property for the purposes stated in ordinance No. 28427. The portion of the statute construed by the court in reaching that conclusion reads as follows:

"Whenever it shall be deemed necessary by any governing body of any city to appropriate private property for the opening, widening, or extending any street or alley, or to condemn private property or easement therein for the use of the city *for any purpose whatsoever* . . ." (G. S. 1935, 26-201). (Italics ours.)

The trial judges were of the opinion that the italicized words enlarged the purposes for which property might be taken by eminent domain by the city, so that the city was no longer restricted in taking property for a public purpose, but that it might take the property by eminent domain "for any purpose whatsoever." In this we think the trial court erred. This is a procedural statute. It is not one designating purposes for which private property may be taken

by eminent domain. By the use of this phrase the legislature never intended to do away with the well-settled rule that the government takes private property by eminent domain only for a public use. The phrase should be interpreted as though it read, "for any purpose whatsoever for which a city is authorized to take private property for public use." We are cited to no statute, and our own research discloses none, which specifically or by necessary implication authorizes the city to condemn lots or blocks for automobile parking places. It is alleged in the petition that this was being done for a private purpose, not a public one. The commissioners appointed by the court found that the city at large was not benefited by the establishment of these parking places, and this report was approved by the city commissioners. It will be observed the city officials apparently had some difficulty in determining a valid theory upon which to predicate the action of the city. Ordinance No. 28427 spoke of these places as "a place to stop and store vehicles." The published notice by the commissioners appointed by the court was entitled "In the matter of condemnation of real estate for the purpose of providing public parking facilities," while the notice to bond buyers, the bond ordinance, and the bonds themselves recited that the bonds were issued for paying the cost of land condemned "for the widening of certain streets and trafficways."

Plaintiffs also complain of conclusion of law No. 11, that the city had power to proceed with the creation of parking stations without first submitting the matter to the planning commission for consideration. Our statute (G. S. 1935, 12-701 *et seq.*) provides for a planning commission and describes its powers and duties. These need not be set out here. It is alleged in the petition and admitted by the answer that the city had created a planning commission under this statute, and the answer alleges that the city—at least the area here in question—had been zoned by ordinance. It is alleged in the petition, and not specifically controverted by the answer, that the establishment of the proposed parking places never had been acted upon or recommended by the planning commission or by any special committee or commission. We think that should have been done under the authority of *Armourdale State Bank v. Kansas City,* 131 Kan. 419, 291 Pac. 745; *Simmonds v. Meyn,* 134 Kan. 419, 7 P. 2d 506, and *Ford v. City of Hutchinson,* 140 Kan. 307, 37 P. 2d 39.

Plaintiffs complain of the trial court's conclusion of law No. 13, that the fact that no order, resolution or ordinance was passed by

the city commissioners declaring it necessary to appropriate the private property sought to be condemned, did not make the application to the judge of the district court for the appointment of commissioners void, and did not render the acts of the appraisers a nullity. The statute (G. S. 1935, 26-201) in part reads:

"The governing body, as soon as practicable after making the order declaring the appropriation of such land necessary . . . shall present a written application to the judge of the district court. . . ."

There is a similar requirement in G. S. 1935, 12-1306, pertaining to the condemnation of land by the city for public parks. The general rule in condemnation proceedings is that there should be a finding or declaration of a necessity for the taking of the private property for a public use, and that conditions precedent to the exercise of the power of eminent domain must be complied with or the proceeding will be void (20 C. J. 888). Ordinance No. 28427 made no finding or declaration of the necessity of the property sought to be condemned, nor was any other order to that effect made, or resolution passed, by the city commission. We are reminded the commissioners appointed by the court found that the city was not benefited to any extent by the establishment of the parking places, and that finding was approved by the board of commissioners of the city. This gives color and force to plaintiffs' allegations that the project was for the benefit of private parties and that it never was regarded by the defendant city or its officers as of a public necessity.

Plaintiffs complain of the trial court's conclusion of law No. 14, that chapter 133 of the Laws of 1927 did not restrict the operation of article 2 of chapter 26 of G. S. 1935, insofar as it relates to the right of the city to condemn property for the purpose set out in ordinance No. 28427. Chapter 133, Laws 1927, as amended and supplemented, now appears as G. S. 1935, 13-1078 to 13-1093a. It pertains to the improvement of streets and alleys, including main arterial trafficways, and it is not inaccurate to say that it does not restrict the operation of G. S. 1935, 26-201 et seq., insofar as it relates to the right of the city to condemn property for the purpose set out in the ordinance. As previously pointed out, the purpose mentioned in the ordinance and in the notice given by the commissioners appointed by the court was to establish parking places. This indicates that the proceedings were initiated under the authority of the city to establish parks. (G. S. 1935, 12-1301, 12-1306.) It was not until defendants got to the notice to bidders on bonds, the bond

ordinance and the bonds themselves, that the thought of improved trafficways became prominent. It is alleged in the petition that these recitals respecting improved trafficways were inaccurate and did not conform to the purposes set forth in ordinance No. 28427, or to the notice given by the commissioners appointed by the court, or to their report. The proceedings, of course, did not harmonize with the statute pertaining to improvement of trafficways (Laws 1927, chapter 133, as amended and supplemented). In fact, we are cited to no statute authorizing the city to condemn private property for public use to which the proceedings throughout would conform.

· The result is that the judgment of the court below must be affirmed insofar as it pertains to the conclusions of law appealed from by defendants and reversed insofar as it pertains to the cross-appeal by plaintiffs.

It is so ordered.