No. 34,225

Thomas J. Barker et al., *Appellees*, v. The City of Kansas City
et al., *Appellants*.

(88 P. 2d 1071)

Opinion filed April 8, 1939.

*Alton H. Skinner,* city attorney, *Joseph A. Lynch,* deputy city attorney, and *Clarence A. Mott,* of Kansas City, for the appellants; *E. S. McAnany, Thomas M. Van Cleave, A. L. Berger, Louis R. Gates* and *William Drennan,* all of Kansas City, of counsel.

*Joel E. Osborn* and *Elmer E. Martin,* both of Kansas City, for the appellees.

The opinion of the court was delivered by

Thiele, J.: Plaintiffs, who are taxpayers, commenced an action against the city of Kansas City, various of its officers, and the county

clerk and county treasurer of Wyandotte county, to enjoin the city from proceeding to condemn lands for parking stations in the city, the same to be paid for by special assessments and general tax. Issues were duly joined and the cause was tried by three judges of the district court sitting *en banc,* and resulted in a judgment for plaintiffs, from which the defendants appeal.

It may here be noted that in 1936 the city commenced proceedings to condemn lands for parking stations, an action in injunction was instituted and the proceedings enjoined. On appeal this court sustained the trial court and held the city was without authority to acquire property by eminent domain for a nonpublic use. (See *Barker v. Kansas City,* 146 Kan. 347, 70 P. 2d 5.) While that appeal was pending, the legislature enacted chapter 152, Session Laws of 1937, the title of the act being:

"An act authorizing cities of the first class, having a population of 120,000 or more, to establish benefit districts for the acquiring and improving of parking stations for public use in such cities, to levy the cost of acquiring and improving the same upon the property in the benefit district benefited thereby, and to issue special improvement bonds to pay the cost of acquiring the land and improving such parking stations for such public use."

Thereafter section 1 of that act was amended by chapter 35, Special Session Laws of 1938, the title of the act being:

"An act authorizing cities of the first class having a population of 120,000 or more to acquire and improve parking stations for public use in such cities, and to issue bonds to pay the cost thereof, amending section 1 of chapter 152 of the Session Laws of 1937, and repealing said original section."

It is under these acts that the city started the proceedings in eminent domain to establish parking stations which caused the filing of the present action. The trial court, after hearing a great deal of evidence, made extensive findings of fact, but concluded that chapter 152, Session Laws of 1937, as amended by chapter 35, Special Session Laws of 1938, was unconstitutional, null and void, and that all the proceedings to establish parking stations were a nullity. Most of the specifications of error are based on the correctness of that holding and, if it is correct, the others become immaterial.

The trial court was of opinion the title of the act, and as amended, was defective under section 16 of article 2 of our constitution; that the act was a special law, and a general law could have been made applicable and was therefore in contravention of section 17 of article 2, and that being a special act and attempting to confer corporate power on the city, it was in violation of section 1 of article 12.

We shall take up the question whether a special or a general law was enacted. If it is a special law and confers corporate power, it is invalid under section 1 of article 12 of the constitution, which provides:

"The legislature shall pass no special act conferring corporate powers. Corporations may be created under general laws; but all such laws may be amended or repealed."

The provision of our constitution with respect to uniform operation of general laws and when special laws may be enacted is section 17 of article 2. As originally adopted it read:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted."

Under that section it was held that whether the purpose sought could be accomplished by a general act was for the legislature to decide. (*State, ex rel., v. Sanders,* 42 Kan. 228, 233, 21 Pac. 1073; *Hughes v. Milligan,* 42 Kan. 396, 399, 22 Pac. 313; *Comm'rs of Barber County v. Smith,* 48 Kan. 331, 334, 29 Pac. 559, 565.) In 1906 the section was amended by adding the following clause:

"And whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of this state."

We have many decisions dealing with laws under the section as it was originally adopted, and as it is now amended, but limits of space preclude reference but to a few of them, which illustrate the general problem.

We approach consideration of the problem bearing in mind the rule of law early announced that—

"All presumptions are in favor of the constitutional validity of a statute, and before the courts can declare it invalid, it must clearly appear to be unconstitutional." (*Comm'rs Leavenworth Co. v. Miller,* 7 Kan. 479, syl. ¶ 8.)

It is also a general rule that for the purpose of construing a statute, courts may take judicial notice of the classification of cities previously made by act of the legislature, the cities included in the various classes, the census returns, the general history of the state, and what the members of the legislature ought to have known when passing the statute which the courts are called upon to construe. (*City of Topeka v. Gillett,* 32 Kan. 431, 437, 4 Pac. 800.)

It has been recognized that although the legislature has seen fit to classify cities into three general classes, the classification is purely arbitrary, and a subdivision of those classes does not make a law

special legislation because pertaining only to a portion of one class limited in its effect to cities of not more than a certain population nor less than a certain other population. (See *Clarke v. Lawrence,* 75 Kan. 26, 33, 88 Pac. 735.) In that case reference was made to *Parker-Washington Co. v. Kansas City,* 73 Kan. 722, 85 Pac. 781, wherein it was said: .

"That for many purposes the classification of cities according to population is a natural and proper one is clear, and we think has never been doubted. The statutes providing for municipal government in this state have always proceeded upon the theory that a system adapted to a small town might not be suitable for a larger one. The theory has not been attacked, and is not open to attack. This general principle reaches the present case. Merely for illustration it may be suggested that the legislature was warranted in believing that in a large city there would be no difficulty in procuring all needed street improvements by issuing to the contractors nonnegotiable obligations running directly against the property specially benefited, while in a smaller city the same result could only be assured by pledging the credit of the whole municipality to the final payment of the cost by the use of negotiable bonds.

"Granting the reasonableness of the principle of classification, *its application rests with the legislature and is not subject to judicial review, although an extreme case could perhaps be imagined in which a court would be justified in holding that an ostensible classification upon the basis of population was only colorable, its real purpose and effect being to limit the application of an act to a single community or group of communities, not distinguishable from others by any differences having relation to the subject matter involved.* Counsel for plaintiff contends that the present instance is such a case. Judicial notice is of course taken that Kansas City is now the only city in Kansas having over 50,000 inhabitants. *This is not determinative of the matter, however, for it is not only conceivable and probable but practically inevitable that other cities in the state will in time attain that size.* As was said in *The State v. Downs,* 60 Kan. 788, 57 Pac. 962:

" 'An act general in its provisions, but which can presently apply to only one city on account of there being but one of requisite population or other qualification, *but which was designed to, and can in all substantial particulars, apply to other cities as they become possessed of the requisite population or other qualification,* cannot be regarded as a special act.' (p. 793.)" (p. 725.) (Italics ours.)

Attention is called to the fact the above case was decided prior to the amendment of the constitutional section under consideration. The same idea was expressed in determining constitutionality of an act authorizing counties having a certain assessed valuation and a certain financial status to construct public buildings, in *State v. Butler County,* 77 Kan. 527, 94 Pac. 1004, where it was said:

"(2) Is the act in conflict with the first provision of section 17 of article 2 of the constitution? (G. S. 1901, § 135.) The language of the provision reads:

'All laws of a general nature shall have a uniform operation throughout the state.' It is urged that the act in question is a general law which can apply to not more than two counties in the state. If, however, it operate uniformly on all the members of the class to which it applies it is not open to the objection, provided the classification adopted by the legislature is not an arbitrary or capricious one. The legislature has the power to enact laws of a general nature which will be applicable only to a certain portion of the state or to a certain class of citizens. The following language is from the syllabus in the case of *Rambo v. Larrabee*, 67 Kan. 634, 73 Pac. 915: 'An act, to have a uniform operation throughout the state, need not affect every individual, every class, or every community alike.' The fact that there are at present but few counties to which the exceptions can apply does not of itself render the act repugnant to this provision of the constitution. In *The State v. Downs*, 60 Kan. 788, 57 Pac. 962, it was said: (Same quotation as noted above.) (To the same effect are *Noffzigger v. McAllister*, 12 Kan. 315; *Tarman v. Atchison*, 69 Kan. 483, 77 Pac. 111; *Parker-Washington Co. v. Kansas City*, 73 Kan. 722, 85 Pac. 781, and cases cited.)" (pp. 533, 534.)

It will be noted that a principal reason assigned that acts presently applicable to one or a few cities or communities may not be said to be special is that other cities or communities, with the passage of time, may come within the prescribed qualifications. And see *State, ex rel., v. Kansas City*, 125 Kan. 88, 262 Pac. 1032, and cases cited; *State, ex rel., v. Smith*, 130 Kan. 228, 285 Pac. 542; and *State, ex rel., v. Wyandotte County Comm'rs*, 140 Kan. 744, 746, 39 P. 2d 286, and cases cited, where the same reasoning has been recognized and followed.

Applying the above reasoning only to the title of the act as originally passed and as subsequently amended, it would appear that other cities of the state might, with the passage of time, come within its purview, and it should be held to be constitutional. The original act, chapter 152, Session Laws of 1937, became effective on April 5, 1937, and the amending act, chapter 35, Special Session Laws of 1938, became effective March 8, 1938. Under section 2 of the original act, it is provided that no bonds may be issued under the provisions of the act after January 1, 1940. Whether one, few or many cities are within the title of the act is to be determined from the census which is taken as of March 1 of each year. (*State, ex rel., v. Board of Education*, 148 Kan. 632, 84 P. 2d 507.) We take judicial notice that on April 5, 1937, and on March 8, 1938, Kansas City was the only city of the first class having a population of 120,000. We know that for any other city to come within the qualification of the act, it must have the requisite population to be reflected in the census taken as of March 1, 1939, or, in other

words, cities not under the act as passed had less than two years to qualify. We take judicial notice that the census for 1938 showed the population of Kansas City to be 126,648, of Wichita, the second largest city of the state, to be 105,324, and of Topeka, the third largest city, to be 76,540. The census for 1939 has not yet been taken and tabulated as required by statute.

A similar situation, although more aggravated, was involved in *City of Topeka v. Gillett*, supra. The question was the constitutionality of chapter 73, Laws of 1875, which took effect March 7, 1875. Section 2 of the act read:

"SEC. 2. No city of the second class shall avail itself of the provisions of this act after the first day of May, and not unless the city council shall, within ten days from the time of the taking effect of this act, give notice by resolutions, passed by a majority of its council, of the intention of the city to avail itself of the provisions of this act; such notice to be by publication in some newspaper published in said city, said publication to be made within ten days from the time of the taking effect of this act: *Provided,* That this act shall not apply to cities having a population of less than six thousand inhabitants."

The direct claim there was that the act violated the provisions of section 1, article 12 of the constitution, providing that the legislature should pass no special act conferring corporate powers. After discussing classification of cities generally, and on the assumption the legislature might pass valid acts conferring corporate powers where the acts themselves for the time being could apply to only one municipal corporation, this court said:

"But such acts, in order to be valid, must in their form be general, and they must also be such that in the ordinary course of things they might and probably would apply to other corporations." (p. 435.)

On the question whether the legislature by special act attempted to confer corporate powers, it was said:

"As before stated, the act is general in its form, but as before intimated, the constitutionality of the act is not to be determined by its form, but is to be determined by what in the ordinary course of things must necessarily be its operation and effect. If its operation and effect must necessarily be special, the act is special, whatever may be its form. If, on the other hand, the act has room within its terms to operate upon all of a class of things, present and prospective, and not merely upon one particular thing, or upon a particular class of things existing at the time of its passage, the act is general.

"We now come to the more particular consideration of the act in controversy. Is it general, or is it special? It excludes from the scope and operation of its provisions all private corporations; all public corporations except cities; all cities of the first class; all cities of the third class; all cities

of the second class except such as have a population of 6,000 and over; all cities not obtaining the benefit of the act within fifty-eight days after its passage; all cities not giving notice under the act, within fourteen days after its passage or within ten days after its taking effect; and, indeed, excluding all corporations of the state of Kansas; except three cities, to wit, Topeka, Lawrence, and Atchison; and it gives to these three cities only fourteen days after its passage within which to commence action under it, and only fifty-eight days after its passage within which to complete such action; and at the expiration of that time the law ceases to have operation and becomes ineffectual and defunct. At the time when this act was passed, there were just ten cities of the second class in the state of Kansas; and this act excluded from its operation all these cities except the three cities above named— Topeka, Lawrence, and Atchison.

"We have taken judicial notice, without formal proof, of some of the matters and things which we have stated; for courts, for the purpose of construing a constitution or a statute, may take judicial notice of everything which may affect the validity or meaning of such constitution or statute. (*Division of Howard County,* 15 Kan. 194; see, also, the cases above cited.) Courts may take judicial notice of the census returns, of the general history of the country, of what the members of the legislature ought to know when passing the statute which the courts are called upon to construe; and, indeed, of what all well-informed persons ought to know. And taking judicial notice of all these things, we can say, without hesitation, that it was not possible for the said act of March 3, 1875, within the time within which it was to have force and effect, to apply to any corporation except the three cities of Topeka, Lawrence, and Atchison. It would apply to just those three cities—no more and no less; and any person who would take the trouble to inform himself with regard to the matter would know it. Is such an act a general act, or is it merely a special act? It is our opinion that it is merely a special act. It is true it applies to three cities, and not merely one; but the act declared unconstitutional in the case of *The City of Council Grove,* 20 Kan. 619, applied to four cities, and not merely one; and the act declared unconstitutional in the case of *The State, ex rel., v. Hammer,* 42 N. J. L. (13 Vroom) 435, applied to two cities, and not merely to one; and the act declared unconstitutional in the case of *The State, ex rel., v. The Lawrence Bridge Co.,* 22 Kan. 438, applied to several different corporations, and not merely to one; and the act declared unconstitutional in the case of *The State, ex rel., v. Hermann,* 75 Mo. 340, applied to a large number of notaries public, and not merely to one." (p. 436.)

Although the limitations of time prescribed in the act there under consideration were much shorter than in the case before us, the general situation is much the same. There was a possibility, but far from a probability, the city of Wichita might increase substantially fifteen thousand people in less than two years, but even if it did, the act might still be in contravention of the constitutional provision, in that even so considered, it would not be of general as

distinguished from special application. There was not even a remote probability the act could affect any other cities. The reasoning and conclusion of the above case has been repeatedly followed, as a reference to Shepard's Kansas Citations will show.

The burden is placed on the court to say not only whether the act is general or special, but whether a general law could have been made applicable, and in that connection we must determine whether by reason of population limitations and the date after which no bonds might longer be issued, the attempted classification was real or fantastic, whether there was sound basis for it, or whether it was ever considered the act could or would affect any city in the state other than Kansas City.

The general question of special laws was under discussion in *Anderson v. Cloud County*, 77 Kan. 721, 95 Pac. 583, and involved an act for construction of a bridge in that county. It was there said:

"It has been estimated that fully one-half of the laws enacted by the state legislatures in recent years have been special laws. Since 1859 the rapid growth of cities and towns has produced so many changes in social and economic conditions, and added so much to the complex necessities of local communities, that the demand upon legislatures for this species of class legislation has increased and the evil effects have multiplied. The legislature of 1905, which differed in this respect but little from its predecessors, passed no less than twenty-five special acts relating to bridges, and thirty-five fixing the fees of officers in various counties and cities. Out of a total of 527 chapters, more than half are special acts. This does not include appropriation laws, which from their nature are inherently special. The first act passed by this legislature declared a certain young woman the adopted child and heir at law of certain persons. Others changed the names of individuals. Many granted valuable rights and privileges to private corporations. Hundreds granted special favors to municipal corporations, and many others conferred special privileges upon individuals. Such were the conditions which induced the people at the general election in 1906 to change the constitution by adopting the amendment to section 17 of article 2." (p. 731.)

And in *Patrick v. Haskell County*, 105 Kan. 153, 181 Pac. 611, where the constitutionality of a statute for relocation of a county seat was in question, after quoting as above from the last-mentioned case, it was said:

"The amendment to the constitution has checked the abuse, but has not stopped it." (p. 158.)

In *Ashley v. Wyandotte County Comm'rs*, 121 Kan. 408, 247 Pac. 859, the question was whether a certain act authorizing construction

of a bridge was a special law and therefore in contravention of the constitution. It was there said:

"In form the act in question is general and is based in part on a classification of population, but added to it are other restrictive features which give it an obviously local and special application and operation. It places counties having a population of 120,000 or more in a class by themselves, and classifications based on the characteristic of population and which are free from other constitutional objections have in some instances been deemed to be valid legislation. (*State v. Downs,* 60 Kan. 788, 57 Pac. 962; *Tarman v. Atchison,* 69 Kan. 483, 77 Pac. 111; *Parker-Washington Co. v. Kansas City,* 73 Kan. 722, 85 Pac. 781, and cases cited.) To be valid, however, the distinction between one class and another must be real and germane to the purposes of the act, and failing in these respects the act must necessarily be condemned as invalid. In the matter of building bridges it is not easy to discern a real difference between counties of 100,000 and those having 120,000, nor is it readily apparent why the general laws relating to the erecting of bridges which appear to be ample and adapted to all the counties of the state, may not be equally applicable to Wyandotte, the only county in the state having 120,000 inhabitants. At the time of its enactment and up to the present time the act is only applicable to a single county, Wyandotte, and it obviously was promoted and passed for the purposes and benefit of its promoters in that county." (p. 411.)

The title of the acts under consideration pertains to acquiring parking stations for public use, although in the body of the original act and in the amending act the word "public" is not mentioned. In the briefs and in the arguments the assigned reason for the parking stations is to afford a measure of relief from traffic congestion on the streets. Assuming that to be the purpose of the act, and no other occurs to us or is indicated in the act or its amendment, we discern no difference between the traffic situation as it exists in Kansas City as distinguished from Wichita, or of those two cites as distinguished from many other cities of Kansas. Laying aside, for the moment, the constitutional provision that corporate power may not be conferred by special act, no reason has been made to appear why the evil sought to be remedied or the good sought to be accomplished may not be by an act of general nature.

We conclude that the act and amendatory act under consideration are special laws enacted in a case where a general act can be made applicable, and contravene the provisions of section 17 of article 2 of our constitution, and being special acts conferring corporate power, they also contravene section 1 of article 12 of the constitution.

In view of our conclusion, it is not necessary that we discuss other matters presented in the briefs.

The judgment of the district court is affirmed.